## Chestnut Hill and Spring House Turnpike Co. *versus* Piper.

1. Defendants, sued in trespass q. c. f., pleaded "not guilty," and that they had an easement of drainage into the close. *Held*, that the plaintiff might give evidence that defendants had opened the drain larger than it had formerly been.

2. Under the general issue the defendants could have given evidence of their easement without reference to the special plea.

3. The defence set up by the plea of "*liberum tenementum*" can be given in evidence under the general issue.

4. Mere permissive enjoyment of a privilege does not make adverse user.

5. Darlington *v.* Painter, 7 Barr 473, followed.

February 15th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Certificate from the Court at Nisi Prius of January Term, 1869, No. 334.

This was an action of trespass q. c. f. by Austin M. Piper and another, executors, &c., of John Piper, deceased, against The Chestnut Hill and Spring House Turnpike Company, Silas Cleaver and others.

The pleas were, 1. "Not guilty."

2. That the company, by virtue of its charter, had a right of watercourse and drainage over the closes mentioned in the declaration, and their officers, by their direction, had the right to enter into the several closes adjoining the company's road, to open such drains through the same as they might deem necessary to carry off the water from their road; the individual defendants, as officers, &c., of the company and by direction of the company, in the reasonable exercise of their right, entered upon the closes to open drains through them, doing as little injury as might be, &c.

3. That the company was entitled to certain easements of drainage upon the closes, and the other defendants, as officers of the

[Chestnut Hill & Spring House Turnpike Co. v. Piper.]

company, entered on the closes and opened the drains, doing as little injury as might be, &c.

There were replications traversing the second and third pleas.

The two questions raised by the pleadings and the evidence were:

Had the company, by virtue of their charter and the laws of the state, the right to open drains on the plaintiff's land? Had they an easement of drainage where they had opened drains on the plaintiff's land?

The case was tried January 17th 1857, before Sharswood, J.

The plaintiff gave evidence that the turnpike was curbed and paved alongside the plaintiff's property in Chestnut Hill; in 1868 the curbstone was broken by the agents of the defendants, and an inlet from the turnpike opened through it to and on plaintiff's enclosure; it was fifteen or twenty feet long; the curb had been put there about the year 1855, since which time there had been no inlet there; the ditch made across the footway was four feet ten inches wide at the curb, and eighteen inches deep with a plank bridge across the opening, the turnpike was filled up and the water turned across the road into the culvert, and all the water was thrown into plaintiff's ground. There was evidence of the extent of the injury to the plaintiff. Also, that since 1855, in consequence of the improvements in Chestnut Hill, the quantity of water flowing down the turnpike had been very greatly increased. There had been a drain at the same place into plaintiff's enclosure, but it was a very small one.

For the defendants, A. Huston testified that from 1829 to 1837 he was superintendent of defendants' road opposite the plaintiff's property; there was then an inlet into his property as now. "The inlet is no deeper than it was at that time; the top of the crossway is no higher; prior to setting the curbs, the inlet and crossway sufficed to take off all the water that came down the hill that far." The defendants gave much evidence that the inlet had been at the place where they had opened it, for thirty or forty years.

In rebuttal, the plaintiff gave evidence by Peter Fisher, in answer to the defendants' case, that the inlet had been originally opened to spread the water on the ground, and that there had been no inlet after the curb was set where the defendants claimed there had been one. M. Trace, called by the plaintiff, testified that he saw the inlet in 1868.

The plaintiff asked witness to state, "How the two inlets compare or differ in size?"

The question was objected to by the defendants. Allowed by the court and a bill of exceptions sealed.

The witness said the inlet was not over one foot wide in 1844, and the last he saw of it, it must have been over three feet wide.

27 P. F. Smith—28

[Chestnut Hill & Spring House Turnpike Co. *v.* Piper.]

The defendants submitted these points:

1. The turnpike company and those acting under it had a right to open the drain complained of into plaintiff's land, provided they judged such drain necessary to carry off and drain the water from the turnpike road, and that the verdict of the jury must be for defendants, unless they find defendants' act in opening the drain malicious or wantonly injurious.

2. There is no evidence in the cause that defendants, in opening the drain, acted maliciously, or that such opening was wantonly injurious to plaintiff.

3. Plaintiff is not entitled to recover by reason of an increase in the amount of drainage thrown upon his land over what it used to be when the inlet through which such drainage flows was first established or at any time since.

4. If the jury find from the evidence that the turnpike company, defendants, had and used a drain from the turnpike into plaintiff's land for more than twenty-one years before the trespass complained of at or about the place where defendants reopened the drain in June 1868, their verdict, under the pleadings and in this form of action, must be for the defendants.

5. A non-user for a less period than twenty-one years of the drain, after a continuous use thereof for more than twenty-one years, would not affect the right of the turnpike company, defendants, to reopen it.

6. Upon the whole evidence in the cause the verdict of the jury must be for defendants.

The court answered the points as follows:

"1st point.    I decline so to charge.

"2d point.    This point I affirm.

"3d point.    This I decline to affirm.    Defendants had no right to increase the capacity of the drain from what it originally was.

"4th point.    This I decline to affirm with the same qualification as in the answer to the third point."

He affirmed the fifth point and declined the sixth point.

The court charged:

"I will confine myself, for the most part, to the principles of law applicable to this case.

"It is an action of trespass *quare clausum fregit*, the gist of which is an unlawful entry upon the plaintiff's possession.    If there is an unlawful entry shown, the plaintiff and executor have a right to recover damages sustained up to the commencement of the suit on January 28th 1869, from June 1868.    If there has been no actual damage, nominal damages only can be recovered. The pleas are not guilty, and two pleas of justification.    First, That they had a right to enter on this ground under their charter and the laws of the Commonwealth; and second, that they had certain easements of drainage on the premises.    Plaintiffs have tra-

versed these facts.  Under not guilty, there must be some evidence
of the presence of each of these defendants at the time of the trespass.
Under the second plea, defendants rely upon their right to enter
under their charter and the laws of the Commonwealth.  This is
a mere question of law, and I have no difficulty with it.  [The
company has no authority by its charter to enter upon lands ad-
joining their road without the permission of the owner.]  They
are authorized to make a turnpike road over an existing road.  It
has been argued from this, because supervisors of roads have the
right to enter upon adjoining lands, the turnpike company has the
like right.  It does not follow that, because the penalty imposed
upon the company for not properly maintaining their road, is the
same as that to which supervisors are liable, the company has the
same rights of entry for the purpose of drainage as the supervi-
sors.  This was not a free road.  The company levies toll for its
own use.  They must show a right under their charter.  There is
nothing under their charter or laws that confers on this company
rights of drainage on adjoining landowners.

"Third.  The burden is upon defendants, under the third plea,
to show right of drainage.  Was there any grant of such a privi-
lege ? or, what was the same thing, was there a continuous adverse
use for twenty-one years or more prior to 1855 of this easement
of drainage ?  There is evidence of an old inlet there.  Was it an
easement of drainage?  For what purpose made, and who made
it ?  It is for you to find whether you can presume a grant by
owners of Piper's lot of right of drainage.

"Fisher testified that it was closed for some time.  Mere per-
missive enjoyment does not make adverse user.  If the use was
interrupted from time to time, the jury may say what was the
character of the use.  To constitute such an adverse use it must
be either by virtue of a grant or as a trespass.  If, as Fisher says,
it was opened for purposes of irrigation, who could have brought
trespass ?  No harm was done to the company by taking the water
off.  They could have no action.  Fisher certainly knows, if he is
to be believed.  It is for you to say, on this sort of testimony,
whether there was a continuous use of this easement for drainage
for twenty-one years prior to 1855.  Non-user for less than
twenty-one years afterwards would not bar the defendants' right.

"The circumstances connected with the laying of the curb may
be considered.  By the resolution, defendants say they did give
permission to lay the curb.  There is no evidence of what their
superintendent did.  What was done at the setting of the curb is
some evidence of the understanding of the parties as to whether
or not this was an easement of drainage.  If enlarged beyond
what it originally was, defendants had no right to increase the
capacity of the old drain, and are liable for damages for the ex-
cess.  If you find there was an easement of drainage, you will find

[Chestnut Hill & Spring House Turnpike Co. *v.* Piper.]

for the defendants, if the capacity of the original drain was not increased. If otherwise, consider damages. There is no evidence of outrage. You are limited to the actual damage between June 1868 and January 1869. The result of a verdict for plaintiff will be, that defendants will probably find means to make other provision for this water. You should be careful not to visit defendants with heavy damages."

The verdict was for the plaintiff for $400.

The defendants took a writ of error. They assigned for error:

1. Admitting evidence that the drain opened in 1868 was larger than it had formerly been,

2. The part of the charge in brackets.

3–6. The answers to defendants' first, third, fourth and sixth points.

*J. C. Longstreth*, for plaintiff in error.—The act incorporating the defendants (Pamph. L. 1803, p. 215), authorized the construction of their road over an existing highway, and transferred the duty of keeping the road in order from the supervisors to the company. The Act of April 6th 1802, sect. 10, 3 Sm. Laws 516, authorized supervisors to enter adjoining lands and open drains, &c. The judiciousness of the supervisor's action cannot be contested unless there has been wanton conduct: Meeker *v.* Commonwealth, 6 Wright 283; Warfel *v.* Cochran, 10 Casey 381. Under plea of justification if defendant afterwards by his acts become a trespasser *ab initio*, the particulars must be specially replied: Stephens on Pleading 221; Chitty on Pleading 625; Tr. & H. Pract. 51; Oystead *v.* Shed, 12 Mass. 506. One having an easement of drainage is not restricted to the quantity of water accustomed to flow: Kauffman *v.* Griesemer, 2 Casey 407.

*J. A. Spencer* and *G. W. Thorn* (with whom was *S. Gormley*), for defendant in error.—A new assignment under the pleadings was not necessary: 1 Chitt. Pleadings 634; 2 Saund. Pleading and Evidence 1099–1107. The pleas having been traversed by plaintiff, the defendants might verify it by evidence; they were bound to prove a right co-extensive with the trespass: Barnes *v.* Hunt, 11 East 451; Darlington *v.* Painter, 7 Barr 473; Washburne on Easements 42; Carter *v.* Page, 8 Ired. 190. Trespass lies for the abuse of right: Kissecker *v.* Monn, 12 Casey 313. If the enjoyment of a privilege be not adverse, the presumption of a grant does not arise; the question is one of fact: Cooper *v.* Smith, 9 S. & R. 26; Esling *v.* Williams, 10 Barr 126; Susquehanna County *v.* Deans, 9 Casey 131; Arnold *v.* Stevens, 24 Pick. 108; Campbell *v.* Wilson, 3 East 294; Cooper *v.* Barber, 3 Taunt. 99.

Mr. Justice SHARSWOOD delivered the opinion of the court, March 1st 1875.

[Chestnut Hill & Spring House Turnpike Co. *v.* Piper.]

The principal reliance of the plaintiffs in error is upon the first specification. The others have been but faintly pressed, and may be left upon the charge below.

Had the declaration in this case been in the general form, in trespass *quare clausum fregit*, and the defendants, without pleading the general issue, had justified by the plea of an easement, there would be great plausibility in the contention that proof of any easement would sustain the plea, and that to avoid this result the plaintiff must new assign. It is unnecessary to consider whether the special character of the declaration rendered this unnecessary. If a plaintiff sets out his claim by metes and bounds, the defendant may plead *liberum tenementum*, but no new assignment is necessary, for obvious reasons. But here there was the plea of not guilty, and the cause was before the jury on all the issues. Under the general issue the defendants below could have given evidence of their easement without reference to the special plea. Even the defence set up by a plea of *liberum tenementum* can be given in evidence under the general issue : Fisher *v.* Morris, 5 Whart. 358. Surely, then, the plaintiff could answer that defence by showing that the trespass complained of was not justified by the easement proved; that while the easement of which evidence had been given was of a drain of one foot, the defendants had made a drain three times that size. Where there are several issues before the jury, whatever would be competent evidence under either, if it stood alone, is admissible. In Darlington *v.* Painter, 7 Barr 473, the general issue was not pleaded, yet it was held in that case that a plea of a general right to a watercourse is not sustained by evidence of a particular right. It would follow that the defendants below failed in their defence under the plea of " certain easements of drainage," if it appeared on their trial that all they could lay claim to was a drain at a particular place and of a limited capacity. The evidence admitted, therefore, to show that the ancient drains had been very much enlarged, was entirely competent under the authority of that case even under the special plea.

Judgment affirmed.