## Morrison *versus* Howell.

*Consentable Division Line.—Effect of, on subsequent Purchasers.*

M. and B. agreed to a division line, by which a portion of M.'s land was cut off, and made part of the adjoining tract of B. M. subsequently bought another title, which covered a part of the lands then cut off from him. Ten years afterwards the division line was affirmed by both parties publicly in the presence of H., who subsequently became the owner of the land of B., bounded by this line, on which he made valuable improvements.

After H. had been thus in possession for about three years, M. sold a part of his land, including a portion of that which had been relinquished by the consentable line. In ejectment by M.'s vendee against H. to recover it, *held*, that as M. could not have claimed the land prior to his conveyance, his vendee was in no better condition, and the judgment of the court below against him was affirmed.

ERROR to the Common Pleas of *Juniata county*

This was an action of ejectment by James R. Morrison against John D. Howell, to recover about twenty-four perches of land in Spruce Hill township, Juniata county. The plea was "not guilty." Under the charge of the court there was a verdict and judgment in favour of defendant. The plaintiff then sued out this writ, and assigned for error the instruction of the court as to the binding obligation of a consentable division line which the evidence showed had been made between a former owner of the land and his neighbour, the plaintiff's vendor; by which the land claimed by the plaintiff had been set off as the property of the person under whom the defendant held.

[Morrison *v.* Howell.]

The case was argued here by *Watts* for plaintiff in error, and by *Parker* for defendant.

The facts of the case are fully stated in the following opinion of the court, which was delivered, June 28th 1860, by

READ, J.—Milligan and Briner, being the owners of adjoining tracts of land, originally surveyed upon applications in the name of Hogg and Chambers, had a dispute as to the division line between them, and in 1833 met upon the ground with a surveyor and established a consentable line, by which the land in dispute was thrown to the Briner tract. This was done fairly and openly, and, by the settled law of Pennsylvania, clearly concluded both parties as to the ownership of the land on each side of this established line at that time. Neither could have successfully maintained an ejectment against the other.

In 1836 Milligan bought the Kasner title to a tract of 2 acres 31 perches, which covers part of both the Hogg and Chambers tracts, as designated by the line run by Milligan and Briner in 1833, three years before. After this purchase, which includes the land now in dispute, Howell, the present defendant, in 1843, was about to dig a well on land he owned adjoining. Briner and Milligan were called on in reference to this line, and both, in the presence of Howell, assented to the line as established by them in 1833. In 1854, Howell bought from Boozle, the owner of the Briner title, 120 perches running to the consentable line of 1833, and built a storehouse upon it, fenced it up, and has been in possession since.

On the 27th March 1845, James Milligan conveyed to J. R. Morrison, the plaintiff, 1 acre 30½ perches, part of the Hogg survey, but not including any of the land now in dispute; and on the 29th September 1857, he conveyed to the plaintiff 2 acres 55 perches as part of Hogg's survey, taking in, as alleged, part of the disputed land, and on the 6th September 1858, his son and devisee, James B. Milligan, by another deed conveyed to the plaintiff 2 acres 58 perches, embracing 3 perches more, the two deeds covering the 24 perches, the subject of this ejectment, and the store and improvements put upon them by the defendant.

It is not disputed by the plaintiff in error that he is in no better condition than his vendor, Milligan, for no error is assigned to that part of the charge in which the court say "if Judge Morrison purchased in 1857 and 1858, this disputed land three years after defendant had purchased and built his store upon it, and was in the possession of it, his title is no better than Milligan's, from whom he purchased. He ought to have inquired of Howell, who was in possession, by what title he held, and, having failed to do so, he cannot take from him both the land and the buildings he must have known he had erected."

Could then Milligan have maintained ejectment agaiast Howell in 1857, prior to his conveyance to Morrison, or, in other words, was he the owner of the land purchased under his own eye, and the buildings erected on it, by its innocent purchaser, without a word of caution, dissent, or disapprobation from him, and after his own deliberate act in 1833, and confirmed in 1843, in the presence of the defendant, asserting the fact that this was a part of the Briner tract, and was neither owned nor claimed by him ? There can be but one answer to this question, and this was given by the jury—that he could not—under a perfectly fair instruction from the court.

The facts were not disputed, but the paper-book is so badly printed that it is almost impossible to ascertain the correct date of any of the deeds or transactions.

Judgment affirmed.