## Hannah T. Omensetter v. Henry Kemper, Appellant.

*Evidence—Trespass—Res gestæ—Measure of damages.*

The question being one of trespass in illegally closing plaintiff's window overlooking property belonging to wife of defendant, evidence is properly admissible as to conduct and declarations of the defendant in regard to consenting to the erection of the windows as bearing on a license from the wife as well as to alleged bad faith, recklessness or oppression of the defendant; the evidence being pertinent in any event, irrespective of the wife's title and defendant's inability to bind her, if it appeared that plaintiff's property was built within her own line, tending as it did to furnish some guidance as to the measure of damage.

*Evidence—Witness cannot be made the arbiter.*

Where the issue turned on the proper division line between two proper-ties a question is properly excluded when, to have allowed the witness to have answered it, would have made him the arbiter of the whole question of title, including the application of the statute of limitation.

*Practice, Superior Court—Unfair assignment—Excerpt from charge.*

An assignment of error is unfair and defective which complains of an excerpt from the charge, wrested from its context, when, if all that was said in the instruction complained of had been quoted, it would appear that the matter in dispute had been left entirely to the jury.

*Practice—Review—Charge of court—Comment on evidence.*

The question turning on the accuracy of certain measurements made, on the one hand by trained surveyors and on the other, by unskilled persons, it was not error for the court to call the attention of the jury to the fact that defendant's measurements were made by "a baker attended by a tin-smith under the supervision of a lawyer." This is not such departure from judicial gravity as to call for a reversal.

*Trespass—Title by possession—Burden of proof on defendant.*

Mere possession is in itself a form of title, and he who interferes there-with must be prepared to show a better title. Plaintiff having been in possession of her house and defendant having invaded her possession, by obstructing her windows, the burden devolved upon him to explain or jus-tify his acts.

*Division fence—Consentable line—Statute of limitations—Burden of proof.*

The mere calling a fence a division fence does not make it one. It is the duty of a party, relying on a fence as a division one, to supply the jury with the requisite facts. A consentable line is not established merely by an existing fence when its character is only accounted for during ten or twelve years.

Argued Oct. 5, 1897. Appeal, No. 38, Oct. T., 1897, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1896, No. 565, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Trespass quare clausum fregit to recover damages for obstruc-tion to plaintiff's light and air by nailing up her windows. Be-fore AUDENREID, J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $183.33. Plaintiff appealed.

*Errors assigned* were (1–3) In admitting questions propounded·
to plaintiff's witnesses as to conversations which had taken
place between them and the defendant.   (4) In overruling the
following question propounded to Joseph Thorp : " Q. Assum-
ing that the fence line as you have put it on the plan was the
fence as it has been in existence as testified to by Mr. Kemper,
and running that fence out upon the straight line as Mr. Kemper
testified that the fence did run to Leverington avenue, state to·
the court and jury whether or not that would show that the
plaintiff's property was built over Mrs. Kemper's property."
(5–8) In charging the jury as follows : " As Mrs. Omensetter
was, undoubtedly, in possession of that house and every part of
it, including not only its interior, but also the wall in which
these windows were opened, it would appear that her possession
has been invaded, and that she is therefore entitled to recover
damages at your hands in this action, unless the defendant can
explain and justify his acts. . . . As the plaintiff is in the pos-
session of the property No. 518 Leverington avenue you are
bound to start out with the presumption that she is lawfully in
possession of it, and that her title is co-extensive with her pos-
session.   It lies on the defendant to show that that house is not
within the plaintiff's own lot, and that the division line is not to
the northeast of the wall in which the windows and doors open.
. . . . The only question of doubt in Mr. Thorp's determination
of the location of the southwest line of the Kemper lot is as to
whether he carefully measured the distance of one hundred and
ninety-six feet one inch from the corner of Ridge avenue.   I do
not think that there is chance for a mistake in this calculation
at any other point. . . . The measurements made for the defend-
ant were made by a baker, attended by a tinsmith, under the
supervision of a lawyer.   It does not appear that any of these
gentlemen ever made a land measurement before."   (9) In af-
firming plaintiff's second point, which point is as follows : " If
the jury believe from the evidence that the defendant gave a
license to the plaintiff to erect the windows in question and in
consequence of which license plaintiff went to an expense by
building her house upon a different plan from that which she
would have adopted if such license had not been given, then
the license was irrevocable, and in no aspect has the defendant
a right to nail the obstructions to plaintiff's window."   (10) In

refusing to charge the jury as requested for the defendant as follows: "It is the uncontradicted testimony of the defendant that the division line between the property of plaintiff and Catharine Kemper for upwards of twenty-one years next preceding the erection of plaintiff's house was marked by a straight fence as shown on the plan of survey which you have in evidence. I instruct you if you find the said fence to have existed as testified to, and that the plaintiff's house is upon or over the line as so established, then your verdict must be for the defendant." (11) The damages found by the jury were excessive.

*W. Horace Hepburn*, for appellant.—The only question before the court below on the trial of this case was as to the location of the division line between the defendant's lot and the plaintiff's property. The evidence admitted under the first three assignments of error were irrelevant and prejudicial and should have been excluded: Bank v. Gillespie, 115 Pa. 564.

The affirmance of the plaintiff's second point as set out in the 9th assignment of error, did not tend in the least possible way to enlighten and help the jury, but did tend to convey the impression that the defendant had committed a wrongful act.

The burden of proof should be upon the plaintiff, and not, as stated by the court, upon the defendant: Wolf v. Wolf, 158 Pa. 621.

The line fence had been recognized for a period beyond the statute of limitations and should not have been disturbed: McCormick v. Barnum, 10 Wend. 104.

Long acquiescence by one in a line assumed by the other is evidence of an agreement: Kip v. Norton, 12 Wend. 127 ; Hunt v. Johnson, 19 N. Y. 279.

A great number of cases confirming the doctrine as stated above may be found in Tyler's Law of Boundaries, Fences and Window Lights, at pages 288 to 294.

. The description of the persons testifying as to the measurements for defendant was couched in language by the trial judge tending to produce a mirthful effect upon the jury, and it had that effect as it brought forth a laugh from them.

. *Francis S. Cantrell* and *Francis S. Cantrell, Jr.*, for appellee. —There was no evidence in this case of a consentable line recog

nized for a period long enough to invoke the statute of limitations. The evidence sufficiently established the proposition that plaintiff had built her house within her own line, and that the act of the defendant was an unwarrantable trespass.

The comments of the court complained of in the assignments of error were mere proper expressions of opinion by the court: Com. v. Orr, 138 Pa. 276.

OPINION BY WICKHAM, J., January 18, 1898:

The plaintiff sued in trespass, for the alleged unlawful acts of the defendant in closing up two windows in the east wall of her house, which is situate on East Leverington Avenue, in the city of Philadelphia. The defendant tried to justify his acts by averring, and attempting to prove, that the wall extended over on the property of his wife, by whose authority he obstructed the windows. The only question, therefore, outside of the matter of damages, was whether or not the wall was built on the land of the defendant's wife. To make this question of fact still more definite and easy of solution, the defendant in his first point, which was affirmed, asked the court to charge that his wife was entitled to a lot fifty feet wide west of the western boundary line of another lot, adjoining and east of hers, known as the Shinkle or Morton lot. This boundary line was marked by an ancient fence which both parties agreed was the true eastern boundary of the Kemper lot.

Under the instruction requested by the defendant and given by the court, it is apparent that if, measuring westwardly from the Morton fence to the Omensetter wall, Mrs. Kemper had a lot fifty feet in width, all she claimed under her deed, then the defendant was guilty of the trespass charged, unless through a consentable line, or under the statute of limitations, the wife could justly claim more land. Such was the necessary effect of the way in which the defendant had the case submitted to the jury. The jury, looking at all the evidence bearing on this point, found in effect, that Mrs. Kemper had the fifty feet referred to east of plaintiff's house and west of the Morton fence, and therefore rendered a verdict against the defendant. The evidence shows, that the defendant intruded west of the eastern surface of the wall, the obstructions having been nailed to the wooden frames set back in the window openings.

The court had in its charge ruled, that there was not suffi-
cient evidence to establish a consentable line, or to give title
under the statute of limitations, to the land occupied by the
wall or any part thereof.   The defendant therefore had to stand
on his wife's deed and the measurements made westwardly from
the Morton fence, and the jury found that she had fifty feet east
of the plaintiff's building.

Let us now look at the assignments of error.   The first, sec-
ond, and third relate to the admission of testimony showing that
the plaintiff's husband, before she erected her house in 1889,
consulted with the defendant, who encouraged the putting in of
the windows.   He talked and acted at that time in such a way
as to lead one, not knowing that his wife held the title, to assume
that he was the owner of the lot adjoining the plaintiff's.   He
alone was sued, and, at the time when the testimony objected to
was offered, his defense was not developed.   The testimony was
therefore properly admitted as part of the history of the matter
in controversy and as bearing on the question of license, as well
as the alleged bad faith and recklessness, or oppression of the
defendant.   Even after the defense had been opened, and it
appeared by the wife's deeds that she was the real owner of the
property occupied by herself and husband, and that he therefore
had no authority to bind her, the evidence was still pertinent,
in case the jury found that the plaintiff's house was built in on
her own lot.   It tended to furnish some guidance as to the
measure of damages.   Omensetter, in the conversation detailed
in the first assignment of error, asked Kemper, after showing
him the plan of the house if he had any objection to it.   Kemper
replied, " No, John, I would rather have those windows there
than a dead wall."   Omensetter says farther, in giving his ver-
sion of the conversation, " I told him I intended to keep within
my own line which I am doing."   The remark " which I am
doing " was volunteered by the witness, was not called out by
any question, and in strictness was inadmissible.   A motion
was made by the defendant's counsel to strike it out, but as
there is no assignment of error, based on the court's refusal to
do so, the matter need not be further considered.

To another witness Kemper said, " I gave him " (Omensetter)
" permission to put two windows in the gable end of this wall,"
and made a like statement to still another person.

The learned trial judge told the jury, in language not to be misunderstood, that Kemper had no authority to represent his wife, and that no license had been proved. The jury found in effect that the plaintiff's building was inside her line. In view of this finding we fail to see why, in assessing the damages, they had not a right to consider the defendant's conduct from beginning to end so far as it related to the windows. He encouraged the putting of them in. He was told by Omensetter that the house would be built west of the Kemper line, and as a matter of fact, it was so built and maintained. And yet, notwithstanding these things, the defendant, without a word of notice or warning, disfigured the plaintiff's habitation and closed up her handsome and costly leaded and plate glass windows by nailing over one an old pine batten door, and over the other " bagging covered with manure, horse manure," thus causing crowds of six to a dozen people to frequently gather, as the evidence shows, to view the odd decorations.

We think that all the testimony of the three witnesses mentioned in the assignments we have been considering, so far as it was responsive to the questions or suggestions of the plaintiff's counsel, was admissible. Anything objectionable and volunteered should have been met, at the time, by a motion to strike out, and if such motion were overruled, the refusal, if excepted to, could have been assigned for error here. This has not been done, and at any rate, the irresponsive matter is so harmless as to be scarcely worth the trouble.

The fourth assignment complains that the court overruled the following question, put for the defense to one of the surveyors on cross-examination: "Assuming that the fence line as you have put it on the plan was the fence as it has been in existence, as testified to by Mr. Kemper, and running that fence out upon the straight line as Mr. Kemper testified that the fence did run to Leverington avenue, state to the court and jury whether or not that would show that the plaintiff's property was built over Mrs. Kemper's property." This question was very properly disallowed for two reasons: first, it does not appear that the witness heard what Kemper had testified, about the fence and the length of time it had existed; and second, to have allowed the witness to answer would have made him the arbiter of the whole question of title including the applicabil-

ity of the statute of limitations. It was the province of the jury to determine whether the Omensetter wall was built on the Kemper property. The witness should have been asked as to the position of the fence with reference to the wall, or the Morton line, or as to like matters within his art.

The fifth and sixth assignments are based on the instructions given the jury to the effect that the plaintiff, being in possession of her house, including of course the wall and windows, and the defendant having admittedly invaded her possession, it devolved on him to explain or justify his acts. As this is hornbook law, part of the very alphabet of the law of trespass, no authorities need be cited to sustain it. Mere possession, fortunately for the good order of society, is in itself a form of title, and he who interferes therewith must be prepared to show a better one.

The seventh assignment is not quite fair to the court below. The instruction complained of is an excerpt, wrested from its context. Had all that was said, on the subject referred to in this instruction, been quoted, it would appear that the matter of the correctness of the conflicting measurements was left entirely to the jury. Even the expression of opinion, contained in the excerpt, was practically withdrawn near the close of the next paragraph of the charge.

In the eighth assignment the appellant complains, that the court said to the jury that the defendant's measurements "were made by a baker attended by a tinsmith under the supervision of a lawyer." That the measurements were made by three persons of the respective callings mentioned, instead of by a surveyor, and that the lawyer superintended, is indubitable, but a careful examination of the testimony does not make it quite clear whether the baker, who was the defendant himself, was attended by the tinsmith, or the tinsmith by the baker. However, a slight mistake in stating the order of rank would be harmless error, as it is quite certain that the baker was at one end of the tape line and the tinsmith at the other. The plaintiff's evidence as to the disputed line came from professional surveyors. The defendant first called in a surveyor, but being dissatisfied with the result, he rejected the artist's work. Then, instead of employing another surveyor, he undertook, with the aid of his counsel and a neighbor, to make his own measurements, this

being the first experience either of the three had in measuring land or finding boundaries. It was, therefore, not out of place for the court to call the attention of the jury to their vocations, and although it may have been done in a manner calculated to provoke a smile, there was not such a wide departure from judicial gravity as to demand a reversal. It may be mentioned here, that the testimony of Mr. Thorp, one of the surveyors, explains how easily these three gentlemen, ignorant of the courses of the lot lines and the angles at which they intersect the avenue, might make mistakes, although actuated by the most honest motives.

It would have been better for the court to have simply refused the plaintiff's second point, set forth in the ninth assignment of error. The answer, however, taken as a whole, is equivalent to saying, "It is true that if a license has been proved, then it is irrevocable, but there is no evidence that either Kemper or his wife gave any license." In the general charge, the jury were emphatically instructed that no license had been shown, the learned trial judge closing his remarks on this head with the words "Therefore as I say, the question of license is out of the case, and you need not consider it." In view of all this, the appellant, in our opinion, suffered no harm from the manner in which the court disposed of the plaintiff's second point. The jury must have understood that, in effect, the point was refused.

The tenth assignment rests on the refusal of the court to charge as follows: "It is the uncontradicted testimony of the defendant that the division line between the property of plaintiff and Catharine Kemper for upwards of twenty-one years next preceding the erection of plaintiff's house was marked by a straight fence, as shown on the plan of survey which you have in evidence. I instruct you, if you find the said fence to have existed as testified to, and that the plaintiff's house is upon or over the line as so established, then your verdict must be for the defendant." To have affirmed this point would have been serious error. It is true the defense offered evidence as to the existence of a straight fence, running back from Leverington avenue, along or near the disputed line, and a part whereof was taken down by the plaintiff when she built her house. It was testified by the defendant and his wife, that the fence had been there some thirty-five years before the trial. Mrs. Kemper

bought in 1877, the Omensetter house was built in 1889. Kemper testified that the plaintiff's husband, between the two years just mentioned, helped to maintain the fence. Under the proof, we have only a period of twelve years, at the most, during which the defendant's wife can be said to have claimed up to the fence. We are left utterly in the dark as to the history of the fence prior to 1877. It does not appear who built or maintained it; whether it was intended to mark the true line or a consentable line; whether it was recognized by former owners as indicating the boundary, or whether Mrs. Kemper's predecessors in title had claimed and held up to it. The merely calling it a division or line fence by the defendant and his wife, in their testimony, does not make it one. It was their duty to supply the jury with facts. The measure of proof is indicated in Brown v. McKinney, 9 W. 565, and Reiter v. McJunkin, 173 Pa. 82, the strongest cases that can be found in our reports in favor of the appellant's position.

We may add, that where this fence stood with reference to the wall is, to say the least, left very conjectural. The only witness who testified directly in regard to the matter was the carpenter, who built the plaintiff's kitchen back of the main building, and who was called for the defense. He stated that he took down about twelve feet of the fence, but added that he built, inside the line, on the plaintiff's own lot.

As to the eleventh and last assignment, we cannot say, looking at all the facts, that the amount of the verdict should lead us to interfere.

Judgment affirmed.