# Citizens Electric Company, Appellant, *v.* Susquehanna Boom Company.

*Equity—Decree—Useless decree—Water rights—Boom companies— Dams—Corporations—Charter powers—Easements—Actions on bonds— Eminent domain.*

1. A chancellor should not enter a decree which will injure the defendant and confer no advantage on the plaintiff.

2. A decree in equity compelling a boom company to open the gates of a dam and permit water to pass through will not be made, where whatever water rights the company seeking the decree has, arise from a deed given in 1854 to its predecessor in title conveying a strip of land "for a mill race to convey water from the pond of the said parties of the first part to the mills designed to be erected by the said parties of the second part, and for no other purpose or use whatever," and the testimony shows that the mills in question were destroyed in 1889 and never rebuilt, and fails to show that the plaintiff company has any intention of erecting a mill which can be operated by water conveyed through the race and the openings in the defendant's dam. Such a decree would be entirely useless and of no benefit to the plaintiff.

3. Where a company's charter authorizes it to erect and maintain a boom on a river, but confers no right to, or control over, the waters

of the river other than those incidental to the maintenance of the boom, it can use the water for no other purpose nor grant authority to another to use it for any other purpose, and where by a supplement to its charter the company is required before proceeding to erect the dam to file a bond in court conditioned that the company will indemnify the landholders adjacent to the dam against all losses or damages of any nature whatsoever that may occur to their lands by reason of the construction of the dam, the company acquires its easement freed from the power of the adjacent owner to obtain payment otherwise than upon the bond, and if such owners have not availed themselves of the security afforded by the bond, they cannot compel the company, by a proceeding in equity, to open the gates of the dam and supply them with water.

*Equity—Findings of fact—Appeal.*
4. Unless manifest error has been committed by a court below in its finding of facts in an equity suit, such findings will not be set aside on appeal.

*Prescription—Adverse and permissive user.*
5. A right by prescription never arises from a permissive user.

Argued Feb. 14, 1910. Appeal, No. 264, Jan. T., 1909, by plaintiff, from decree of C. P. Lycoming Co., June T., 1906, No. 1, dismissing bill in equity in case of The Citizens Electric Company v. The Susquehanna Boom Company. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity to compel the opening of the gates of a dam. Before HART, P. J.

The opinion of the Supreme Court states the facts.

*Error assigned* was decree dismissing bill.

*John G. Reading,* of *Reading & Allen,* and *Ames & Hammond,* for appellant.—When one uses an easement whenever he sees fit without asking leave, or without objection, the use is adverse; and an adverse enjoyment for twenty-one years gives an undisputed title to the enjoyment: Strickler v. Todd, 10 S. & R. 63; Garrett v. Jackson, 20 Pa. 331; Pierce v. Cloud, 42 Pa. 102; Carter v. Tinicum Fishing Co., 77 Pa. 310.

Where a right has been established, either by deed or by

adverse user, that right cannot be lost except by deed or non-user in analogy to the statute of limitations: Dyer v. Depui, 5 Whart. 584; Erb v. Brown, 69 Pa. 216; Bombaugh v. Miller, 82 Pa. 203.

It is settled that a court of equity will interfere to restrain by injunction a trespass of a permanent nature: Masson's App., 70 Pa. 26; Hacke's App., 101 Pa. 245; Manbeck v. Jones, 190 Pa. 171; Sullivan v. Steel Co., 208 Pa. 540.

*Seth T. McCormick,* for appellee.—The findings of the court will not be set aside if they appear to have been authorized by the evidence: Steinmeyer v. Seibert, 190 Pa. 471; Dilworth v. Kennedy, 201 Pa. 388.

An uninterrupted exclusive use and enjoyment of the water in any particular way above twenty-one years affords a conclusive presumption of right in the party so enjoying it equal to prescription. The extent of this prescriptive right is measured, however, by the extent of the enjoyment and is confined to the right as exercised originally: Irving v. Media Boro., 10 Pa. Superior Ct. 132; Messinger's App., 109 Pa. 285; Jones v. Crow, 32 Pa. 398.

Mere permissive enjoyment of a privilege does not make adverse user: Turnpike Co. v. Piper, 77 Pa. 432; Susquehanna County v. Deans, 33 Pa. 131; Demuth v. Amweg, 90 Pa. 181; Bennett v. Biddle, 140 Pa. 396; Hudson v. Watson, 5 Pa. Superior Ct. 456; Pierce v. Barney, 209 Pa. 132; Zerbey v. Allen, 215 Pa. 383.

OPINION BY MR. JUSTICE MESTREZAT, March 14, 1910:

An extended review of the several questions raised on this record is unnecessary. The learned trial judge has filed an exhaustive opinion in which he has found the facts and correctly stated the law applicable thereto. His opinion amply vindicates the correctness of the decree dismissing the bill.

The plaintiff company is the appellant and insists that the court below erred in the findings of both fact and law, and its counsel undertake to point out these errors in their exhaustive brief. We have carefully examined the case, both as to the law

and facts, and while we might have found some of the facts differently, had we been the sitting chancellor, we are not prepared to say that the learned judge of the court below committed manifest error in any of his findings. There was sufficient evidence to warrant his findings of fact, and under our well established rule, we cannot interfere and set them aside. The counsel for the appellant recognize this rule and frankly say that they "assume the burden of showing to this court that manifest error was committed by the court below in its findings of fact from the testimony in the case." We are not convinced that the burden assumed by the appellant has been met, and hence must dispose of the case on the facts as they have been found by the learned chancellor in the court below.

Whatever water rights the plaintiff company may have arises from the grant contained in the deed from Sampson et al. to Bronson et al., dated April 11, 1854, and therein it is expressly provided as follows: "The said strip and piece of land is conveyed by the said party of the first part for a mill race to convey water from the pond of the said parties of the first part to mills designed to be erected by the said parties of the second part, and for no other purpose or use whatever." The plaintiff, therefore, cannot use this strip of land conveyed to it for any other purpose than for conveying water to its mills, and the mills having been destroyed by the flood of June 1, 1889, and never rebuilt, we are at a loss to see how the plaintiff is injuriously affected by the action of the defendant company in closing the gates in its dam and preventing the water from flowing through the race to the place where the mills formerly stood. The uncontradicted evidence shows that there has been no mill on the site of the former mills fed by water flowing through the gates of the defendant's dam since 1889, and fails to show that the plaintiff company has any intention of erecting a mill which can be operated by water conveyed through this race and the openings in the defendant's dam. As the plaintiff cannot use the race for conveying water for any other purpose, it follows that a decree in its favor compelling the defendant to open the gates and permit the water to pass through the dam would be entirely useless and of no benefit to the

plaintiff. A chancellor should not enter a decree which will injure the defendant and confer no advantage on the plaintiff. The learned court below correctly says: "When we come to consider the fact that the only avowed purpose of the plaintiff was the mere removing of the material placed in these openings so that the water might run through—not to operate a sawmill or anything else—but merely to exercise the right claimed by it of venting water through this dam, it does not seem to us as though a court of equity should be expected to exercise the strong arm of the law in restraining an interference with any such apparently aimless act."

The defendant's original charter authorized the company to erect and maintain a boom in the Susquehanna river near Williamsport, but conferred no right to or control over the waters of the river other than those incidental to the maintenance of the boom. It could use the water for no other purpose nor grant authority to another to use it for any other purpose. The supplement to the charter authorizes the company to erect a dam across the river with certain restrictions as to height, etc., but conferred no other or greater authority as to the water and its use than the company possessed under the original charter. The supplement required the company before proceeding to erect the dam to file a bond in the common pleas of Lycoming county conditioned, inter alia, that the company would indemnify the landholders adjacent to the dam against all losses or damages of any nature whatsoever that might occur to their lands by reason of the construction of the dam. The bond in the designated sum was approved by the court and filed as required by the charter. The security having been given, the grasp of the owners upon their property was loosened and the easement acquired by the defendant company passed freed from their power to obtain payment otherwise than upon the bond: Fries v. Southern Penna. R. R. & Mining Co., 85 Pa. 73; Hoffman's App., 118 Pa. 512; Fischer v. Catawissa Railroad Co., 175 Pa. 554. There is no provision in the original charter or supplement requiring the company to place gates in the dam to permit water to pass for any purpose, and therefore the plaintiff company and its predecessors

in title could not compel the defendant to open its dam to supply water to the mills. If the plaintiff and its predecessors in title, as owners of adjacent lands, were injured by the erection of the dam and their water power was thereby destroyed, the remedy for the injury was on the bond which was amply adequate to indemnify all interested parties against "all losses or damages of any nature whatsoever." If the owners have not availed themselves of the security afforded by the bond, they cannot now compel the defendant company to open the gates of its dam and supply them with water.

Having the right, under its charter, to erect and maintain the dam without being required to make an opening therein for furnishing water for operating the plaintiff's mills, the defendant cannot be compelled to place gates or make an opening in the dam to allow water to flow to the mills; and if such gates were constructed by the defendant the right to take water through them was by its permission. The learned court below finds: "There can be no question from the evidence but that the use of the opening in the dam by the plaintiff's successors in title was permitted by the defendant, and that at no period of time whilst it was being used was it an adverse user." A right by prescription to use the opening to secure water for plaintiff's mills, therefore, could not arise, as there would be no presumption of a grant which is necessary to a valid prescriptive right: Turnpike Company v. Piper, 77 Pa. 432; Demuth v. Amweg, 90 Pa. 181. The plaintiff's contention that it has a prescriptive right to use gates or an opening in the defendant's dam for water to run its mills cannot be sustained.

The decree does not deprive the plaintiff company of any use it may desire to make of the waters of the river. Any right to the waters of the stream it may have as riparian owner or otherwise it still retains. It is not, however, in a position to demand that the defendant company shall open its dam, constructed by authority of a charter granted by the commonwealth, so that it may utilize the water of the Susquehanna river for any particular purpose.

The decree is affirmed.