### Adams, Appellant, v. Tamaqua Underwear Company et al.

Argued March 17, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*G. H. Gerber,* and with him *A. D. Knittle,* for appellant.

*Chas. E. Berger,* and with him *F. P. Krebs,* for appellees.

Opinion by Trexler, P. J., July 14, 1932:

The plaintiff filed a bill in equity alleging inter alia that the defendants were trespassing on her property in the erection of a building, praying that they be restrained from further entering; and that the damages already caused be ascertained and compensated.

The parties to the action are the owners of two contiguous town lots, situate in the Borough of Tamaqua. The title to both came from a common source. Anna E. Helwig was the former owner, and in her last will and testament, devised lot No. 8 to her son, George Christian Berner, and lot No. 7 to Anna S. Snyder, from whom the plaintiff claims. The devise to the latter contained the following words: "The driveway at present existing between this lot and lot No. 8 de-

vised to my son George C. Berner in the preceding paragraph is to be and remain open for the joint use of devisees of both lots and their heirs until such time as it shall be closed by mutual agreement or by purchase.''

The first question submitted is whether the right to use the alley was confined to the heirs of the testatrix, or could be passed by them to their successors in title. The words ''for the joint use of the devisees of both lots and their heirs'' imply an absolute right. The language employed in the latter part of the phrase, ''until closed by mutual consent,'' instead of limiting the control or disposition of the subject-matter of the devise, confirms it. Neither owner can deprive the other of the right. To end the easement there must be ''mutual consent.'' The words ''by purchase'' are of doubtful meaning, and being doubtful they cannot be used for the purpose of limiting an absolute devise. The present owner of lot No. 8 has the undoubted right to use the alley as a means of approach to his property to the extent of the original devise, and we need not make any further reference to this subject, except incidentally.

A more serious question is whether the owner of the one lot in the erection of his building went beyond the line and trespassed on the plaintiff's property. The lots were approximately 230 feet deep; the alley extending back from the street line 100 feet, beyond that, the division line of the property is the subject of the present dispute.

The evidence discloses that following the call of the plaintiff's deed the structure of the defendants is over the line some inches, the overlap not being consistent, but greater at one end than the other. If this were all there is in the case the plaintiff would be entitled to a favorable decree, for the call of her deed would give her the land in question. It appears, however, that there was a fence erected in 1899 along the line

now in dispute. Plaintiff, in her examination in chief, stated, "The fence was on the line," it was in that position "thirty years." Her account of the circumstances when the employees of the defendants starting to erect the structure, which was the cause for the bringing of this present bill, is as follows: "Q. The fence was on the line? A. The fence was on the line. I asked him (defendants' employee) if he took the line, and he said yes, he took the line; and I said, 'Well, I would rather he would have taken a few inches less and be sure he would have the line, because my uncle worked there when they put fence up.' "

There was sufficient testimony to support the finding that no portion of the erection, complained of, extended over the line indicated by the fence, and that the fence was a consentable line recognized by the action of the respective owners who erected it.

We quote from the opinion of HOUCK, Judge:

"The uncontradicted proof and the plaintiff's admissions show that a fence was erected on the line in 1899; that it was erected by plaintiff's and defendants' predecessors in title; and that it remained without complaint and apparently with acquiescence of all parties concerned for a period of thirty years. Under these circumstances, it is our opinion that the fence line fixes the true boundary between plaintiff's and defendants' lots. The maintenance of a line fence between owners of adjoining lands by their acts, up to which each claims and occupies, is a concession by each of the open adverse possession by the other of that which is on his side of the division fence, which, after twenty-one years, will give title, though subsequent surveys may show that the fence was not exactly upon the surveyed line: Reiter v. McJunkin, 173 Pa. 82, 84. The fact that the fence is within the line is not controlling, but, if it is so maintained for more than twenty-one years, then the fence fixes the boundary: Reiter v. McJunkin, 8 Pa. Superior Ct. 164; see same

case 194 Pa. 301; see also Brown v. McKinney, 9 Watts 565; McCoy v. Hance, 28 Pa. 149; Miles v. Pennsylvania Coal Company, 245 Pa. 94; Hutchinson et al. v. Little Four Oil & Gas Company et al., 275 Pa. 380, 388. [Yeiser v. Hornberger, 99 Pa. Superior Ct. 453; Culver v. Hazlett, 13 Pa. Superior Ct. 323, 329.] Fences erected by former owners for the purpose of subdividing the original property are marks on the ground limiting the title and defining the possession. As such they must stand with like effect as if they had been written into the conveyance. The courses and distances in a deed always give way to the monuments found upon the ground or supplied by proof of their former existence when the marks or monuments are gone: Long v. Shields, 20 Pa. Superior Ct. 559, 565. From the foregoing it follows that the true boundary line between lots 7 and 8 is the fence which was erected in 1899.'' We all agree that the conclusion reached was right.

There is but one other assignment that requires notice. Plaintiff complains of the statement by the court that the burden is upon the plaintiff ''to show the boundary line, and to show that defendants' deed does not carry to the fence line.'' This is a technical objection, which does not effect the result. The lower court conceded that the call of the plaintiff's deed established an encroachment upon the part of the defendants, and admitted that the defendants' deed did not carry to the fence line, and that the defendants' building extended over the boundary line referred to in the deed to which the court alluded as the theoretical line. Whatever may have been the court's view of the burden of proof, its conclusion was not premised upon any lack of ''record'' proof on the part of the plaintiff, but on the very evident fact supported by ample testimony that the fence was a consentable line.

The assignments are overruled, and the decree of the lower court is affirmed.