Beals et ux., Appellants, *v.* Allison et ux.

Argued April 14, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*D. J. Skelly,* with him *Nesbit & Wasson* and *Skelly & Mogilowitz,* for appellants.

*Robert M. Dale,* with him *S. B. Babcock,* for appellees.

OPINION BY ROSS, J., July 17, 1947:

This is an action of ejectment to secure possession of a strip of land 1.28 feet in width between the residences of adjoining property owners in the city of Franklin. By agreement of the parties entered into pursuant to the Act of April 22, 1874, P. L. 109, section 1, 12 PS 688, the case was heard without a jury. The trial judge adjudicated title to the strip of land to be in the defendants and the plaintiffs have taken this appeal.

One Christina Griffin, on December 13, 1900, was the owner of an unimproved lot known as In lot No. 548, as described on the general plan of the city of Franklin, and on that date conveyed to Sadie Ritts Foster, predecessor in title to the defendants (appellees) "All that east one half of that certain In lot in the City of Franklin, Venango County, Pennsylvania, numbered Five Hundred and Forty-Eight (548) on the general plan of said City said property hereby conveyed being bounded on the west by part of said In lot No. 548, conveyed this day by first parties to Mrs. Mary A. Hollister; on the north by In lot No. 599; on the east by In lot No. 549; and on the south by Elk Street, having a frontage on Elk Street of Thirty-seven and one half (37½) feet, more or less, and extending in depth one hundred and fifty (150) feet", and on the same date conveyed to Mary A. Hollister, predecessor in title to the plaintiffs (appellants) "All the west one-half of that certain In lot in the City of Franklin, Venango County, Pennsylvania, numbered Five Hundred and Forty-Eight (548) on the general plan of said City said property hereby conveyed being bounded on the west by In lot 547; on the north by In lot No. 599; on the east by part of said In lot No. 548 conveyed this day by first parties to Mrs. Sadie Ritts Foster (wife of Dr. S. G. Foster) ; and

on the south by Elk Street, having a frontage on Elk Street of Thirty-seven and one-half (37½) feet, more or less, and extending in depth one hundred and fifty (150) feet".

Shortly after these conveyances, the grantees, planning to erect residences on the land they had purchased, employed a surveyor to locate the line dividing the east half of Lot 548 from the west half. The surveyor erred in locating the line and, as a result thereof, this litigation ensued more than forty years later.

The strip of land from which the plaintiffs sought to eject the defendants lies wholly within the east or Foster half of Lot 548 and the plaintiffs base their cause of action upon an alleged parol consentable boundary line.

In actions of ejectment the usual rule applies that the burden of proof rests upon the one asserting facts upon which he relies as a basis of recovery or defense. By the provisions of the Act of May 8, 1901, P. L. 142, section 2, 12 PS 1547, the evidence in a trial of an action of ejectment must be limited to the issues raised by the pleadings. In their pleadings the plaintiffs alleged, inter alia: "2a. That in the year 1901, Mary A. Hollister, being the then owner of the westerly part of In lot No. 498, in the said city of Franklin, Venango County, Pa., and Sadie Ritts Foster, being the then owner of the easterly part of said In lot No. 498, being uncertain and in doubt as to the boundary line between their respective properties, caused a survey thereof to be made in order to establish the boundary line between their respective properties. 2b. That the survey having been made, the said Mary A. Hollister and Sadie Ritts Foster agreed to construct the houses which they were about to erect, so that the foundation of their respective houses should be equally distant from the line so established by said survey; and did so erect their houses so that the dividing line between their respective houses was equally distant or midway between the foundations of the houses so erected by them. 2c. That after said survey had been

made and said line established, the said Mary A. Hollister erected and constructed her house with reference thereto and entered upon the land and occupied and used said land up to the line so established, and her successors in title, including the plaintiffs herein, have continued to use and occupy said land up to said established line until on or about July 1, 1940, when the defendants unlawfully, and without right, title and interest in said land, took possession of the same. 2d. That the said line, as established by the said Mary A. Hollister and Sadie Ritts Foster, has been acquiesced in by the said Sadie Ritts Foster and her successors in title for upwards of forty years and more."

The question before this court is whether under the evidence in the case it is shown that the parties by agreement established a consentable boundary line binding upon the parties. In *Newton v. Smith*, 40 Pa. Superior Ct. 615, this court, speaking through Judge BEAVER, stated: "That a consentable line may be established by parol which will, under certain circumstances bind the parties who assent thereto, is clearly established in Pennsylvania. In order, however, to make such a line binding it is necessary that there should be, first, a dispute; second, the establishment of a line settling the dispute; third, the consent of both parties to that line and the giving up of their respective claims which are inconsistent therewith."

In this case, a review of the evidence shows no disagreement or dispute between Mary Hollister and Sadie Foster, and on the contrary, there is positive testimony by the plaintiffs' witnesses that there was no dispute. Pearl Hollister, a daughter of Mary A. Hollister, testified: "Q. And at the time that you had this survey made to determine the center of In lot 548 you were good friends? A. Very. Q. And there was no dispute? A. Never. Q. Between you about where the line was? A. Never. Q. There was no doubt or ambiguity, was there? A. Not at all. Q. When you bought the properties

there wasn't any dispute as to where the center was? A. No. Q. I am talking about the time the survey was made. It was merely made for the purpose of finding out where the line was, wasn't it? A. Yes. Q. It was not because of any dispute? A. Oh, no. Q. It was simply because the whole in lot had never been partitioned, is that right? A. Yes. . . . Q. Or there was never any reason to fix a consentable line, was there? A. Not at all. Q. When your mother first bought and Dr. Foster first bought there was no reason to fix a consentable line, was there? No dispute between you? A. No dispute." Dr. S. G. Foster, husband of Sadie Ritts Foster, and a witness for the plaintiffs, testified that there never was any question or dispute between the parties as to where the line was. Both witnesses were present when the proposed survey was discussed.

In *Perkins v. Gay,* 3 S. & R. 327, GIBSON, J., in discussing a consentable line, stated: "The establishment of this kind of boundary is always a matter of compromise, in which each party supposes he gives up for the sake of peace something to which in strict justice he is entitled. There is an express mutual abandonment of their former rights, upon an agreement, that whether they be good or whether they be bad, neither is to recur to them on any pretence whatever, or claim anything that he does not derive from the terms of the agreement. Each takes his chance of obtaining an equivalent for everything he relinquishes, and if the event turn out contrary to his expectations, so much the worse for him." In this case, the testimony negatives the giving up for "the sake of peace" any rights of the parties—any compromise—any intention to create a *new* boundary line. A consentable boundary line connotes a *new* boundary line *created* by agreement of the parties. It is clear from a reading of the testimony that the purpose of the survey was not to *create* or establish a *new* line but to *locate* a line.

Pearl Hollister testified: "Q. Now in any event what you have been endeavoring to tell this Court right along is that your family was to have half of that in lot, 37½ feet, is that right? A. More or less, yes. Q. Well, no less? A. No. Q. And no more? A. Yes. Q. And in other words, your family was to have one-half or 37½ feet? A. Yes. Q. The Fosters were to have their one-half or 37½ feet? A. Yes. Q. Or if there was more than 75 feet in the in lot then each one of you—I mean by that the Hollisters were to have one-half of the in lot, is that right? A. Yes, equally divided. Q. That is what the original intention was? A. Absolutely. Q. And that is how the houses were to be built? A. Absolutely. Q. Regardless of where the line was the houses were to be so constructed that the Hollister house was on the westerly half of the in lot, is that right? A. Yes. Q. And so that the Foster house was on the easterly one-half of the in lot? A. Yes. Q. And that you then should—each family should own up to what was the definite actual dividing line of that in lot, isn't that right? A. Yes. Q. So that there would be no error then and before the houses were even started there was a survey made, wasn't there? A. Yes. Q. And the purpose . . . was to determine the true and actual center line of the in lot? A. Yes. Q. Right? A. Yes."

It is not disputed that Hollister and Foster erected their houses in relation to the location of the center line as designated by the surveyor. However, as stated in *Perkins v. Gay*, 3 S. & R. 327, supra, at page 331, ". . . if the parties, from misapprehension, adjust their fences, and exercise acts of ownership, in conformity with a line which turns out not to be the true boundary or permission be ignorantly given to place a fence on the land of the party, this will not amount to an agreement, or be binding as the assent of the parties; and I agree it is a principle of equity, that the parties to an agreement must be acquainted with the extent of their rights and the nature of the information they can call for respecting

them, else they . . . proceed under an idea that the fact which is the inducement to the agreement, is in a particular way, and give their assent, not absolutely, but on conditions that are falsified by the event. Cf. *Holland v. Hayes,* 40 Pa. Superior Ct. 195.

Not every line assented to by parties is a consentable line. *Grogan v. Leike,* 22 Pa. Superior Ct. 59. The only inference to be drawn from the evidence is that the parties *assented* to a *building* line. The strip of land involved in this proceeding lies between the residences of the parties and, according to the testimony, has not been in the exclusive possession of either of the litigants or their predecessors in title, but has been used "in common by the parties". In his final decree the learned court below protected any rights of easement the plaintiffs may have by including therein the following: ". . . under the unusual circumstances here existing, this court excepts from this decree the question of title to any easements that may or may not exist over this said strip of land, which subject matter may be determined in the appropriate proceedings."

Decree affirmed.