547 A.2d 1216

**Theo PLOTT, Deceased,**

v.

**Raymond R. COLE.**

**Appeal of Lois E. PLOTT, Executrix.**

Superior Court of Pennsylvania.

Submitted June 13, 1988.

Filed Sept. 13, 1988.

Richard B. Swartz, Harrisburg, for appellant.

John W. Frommer, Harrisburg, for appellee.

Before CIRILLO, President Judge and WIEAND and DEL SOLE, JJ.

CIRILLO, President Judge:

This is an appeal from an order of the Court of Common Pleas of Dauphin County dismissing plaintiff's action in ejectment and declaring defendant the owner of property in dispute. We reverse.

This boundary dispute arises out of the following facts. Theo Plott owned half of a double frame house in Dauphin County. She had lived in the western side of the house, 157 Ann Street, for fifty-six years before her death, which occurred during the pendency of this appeal. Following Theo Plott's death, her daughter, administratrix of her estate, was substituted as appellant in this action. Raymond Cole is in possession of the eastern side of the house, known as 155 Ann Street.

Originally, these two homes were one large home owned by Katie Plott, Theo Plott's mother-in-law. Katie Plott devised the double frame home to her four children. Following a family settlement, title to 157 Ann Street was vested completely in George D. Plott and his wife, Theo Plott, and title to 155 Ann Street was vested in Alice Plott Houser and her husband, Russell S. Houser. This family settlement was made a matter of record by deed of 1953. Mr. Houser died, and Mrs. Houser's death followed in 1982. The premises were then conveyed to Joseph D. Robinson by Paul E. Houser, Executor of Alice Plott Houser's estate, by deed dated March 15, 1982. Mr. Robinson defaulted on his mortgage, and the premises were sold by sheriff William Livingston to the Administrator of Veteran's Affairs, and were conveyed by deed dated April 29, 1983. Early in October, 1983, the Administrator of Veteran's Affairs gave defendant Raymond Cole permission to take possession of 155 Ann Street.

The deed conveying the property known as 157 Ann Street from the devisees (Katie Plott's children) to George and Theo Plott describe the properties as being separated

by a partition wall, providing for an easement *in favor of the owners of 155 Ann Street to use the eastern half of the double stairway located on the western side of the partition wall* to travel to and from the second floor of 155 Ann Street. The deed conveying the property known as 155 Ann Street from the devisees to Mr. and Mrs. Houser describes the premises along with the "right to use" the eastern half of the double stairway in the rear of the house known as 157 Ann Street, "along the western side of the aforesaid partition wall."

The area in dispute is located in the rear of the house under the stairway. The area is rectangular, measuring three feet by nine feet. During the mid–1950s, a wall was erected along the western side of the double stairway, screening the stairway for privacy purposes. There is no access from 157 Ann Street to 155 Ann Street.

At trial, Mr. Robert Sherrick, a licensed surveyor, testified that the stairway used by the defendant at 155 Ann Street and the rectangular area under the stairway are within the boundaries of 157 Ann Street, and thus belong to Mrs. Plott. Mr. Sherrick based this statement on his physical reconstruction of the boundary lines from the call of the deeds. Mrs. Plott testified that although previous owners of 155 Ann Street had been permitted to use the area under the stairway as a storage closet, it was understood that the area was within the boundaries of 157 Ann Street. Mrs. Plott also testified that her son-in-law built the screening wall "quite a number of years" ago.

In 1986, defendant installed a water closet (toilet) in the rectangular area under the stairway. The screening wall is all that separates the water closet from Mrs. Plott's kitchen. Mr. Cole testified that there is no ventilation in the water closet.

Mrs. Plott filed the instant action in ejectment, alleging that she and the other inhabitants of her home (her son and daughter) had been subjected to foul odors, noise, insects, and rodents as a result of the installation of the water closet. The defendant claims that the subject area is within his exclusive right, title, interest and control.

Following a hearing and a view of the premises, the trial court found the area in question to be part of the defendant's property. This appeal followed.

Appellant raises the following issue for our review: whether the trial court erred by not giving effect to the clear intent of the parties to the original deeds, as established by the description of the properties in the deeds, the only survey in evidence, and the testimony of Mrs. Plott, all of which were uncontradicted.

"The question of what is a boundary line is a matter of law, but where a boundary line, or corner, is actually located is a question for the trier of fact." *Murrer v. American Oil Co.*, 241 Pa.Super. 120, 124, 125, 359 A.2d 817, 819 (1976). Where, as here, the court sat as trier of fact, we will not reverse on appeal unless the court's

findings are not supported by credible evidence. *Norwich v. Beaver*, 326 Pa.Super. 456, 474 A.2d 329 (1984); *Bigham v. Wenschhof*, 295 Pa.Super. 146, 441 A.2d 391 (1982).

The trial court found the screening wall erected for privacy purposes to be the boundary line between the disputing parties. The court relied upon *Medara v. Dubois*, 187 Pa. 431, 41 A. 322 (1898). In *Medara*, the Pennsylvania Supreme Court held that although a house may extend beyond a party wall as contained in a deed or survey, the deed or survey must give way to monuments on the ground. *See also Lodge v. Barnett*, 46 Pa. 477 (1864). It is true that where there is a conflict between the courses and distances in a deed description and the boundaries found on the ground, a monument on the ground will control. The principle behind this rule was explained as follows:

> If titles were to depend upon the fluctuations of the compass, or errors of the chain or rod-pole, upon the measurement of angles or of distances, instead of the lines, monuments, or marks upon the ground, it would open a door to a flood of litigation, every new artist furnishing fresh cause of a new suit.

*Lodge v. Barnett*, 46 Pa. at 485. However, here there is no conflict between the courses and distances in the deeds and the actual location of the partition wall on the eastern side of the stairway as described in the deeds. The conflict before us is not the type which the rule in *Medara* and *Lodge* was meant to resolve.

The conflict here arose from the construction of the screening wall, which the plaintiff claimed was intended as a privacy wall, and not as a new boundary, and which the defendant claimed had become the new partition wall as a result of his and his· predecessors' occupancy. The trial court stated in its opinion: "The Plaintiff's predecessor[s], by erecting the division wall at this location (referring to the screening wall), expressed their intention that this wall become the boundary between the two properties."

The primary function of the court faced with a boundary dispute is to ascertain and effectuate the intent of

the parties at the time of the original subdivision. *Roth v. Halberstadt,* 258 Pa. Super. 401, 392 A.2d 855 (1978). The intent of the original grantors, as ascertained from the language of the deeds dated 1953, was to create two separate dwellings. However, the language in the deeds is clear that the stairway west of the partition wall is part of 157 Ann Street, with an easement for the use of that stairway in favor of 155 Ann Street. The deed to 157 Ann Street describes the property, and adds the following easement language:

> *Subject to the right of the owners of* said premises known as *No. 155 Ann Street,* their heirs and assigns, *to use the eastern half of the double stairway in the rear of the dwelling house on the land hereby granted and conveyed along the western side of the aforesaid partition wall for ingress, egress, and regress* to and from the second floor of the dwelling house erected on the eastern side of the said partition wall on adjoining premises known as No. 155 Ann Street.

The deed to 155 Ann Street corresponds, describing the property as follows:

> Together with *the right* to the said Grantees, their heirs and assigns, *to use the eastern half of the double stairway in the rear of aforesaid dwelling house, known as No. 157 Ann Street, along the western side of the aforesaid partition wall* for ingress, egress and regress to and from the second floor of the dwelling house hereby granted and conveyed.

The deed dated 1982, conveying the property known as 155 Ann Street, also contained the easement language. Following a sheriff's sale, the deed conveying the property (155 Ann Street) to the Administrator of Veterans' Affairs referred to the previous conveyance and to the place of record in the Record Book (Record Book 277, Page 350, Dauphin County).

■ The crucial question here is whether the construction of the screening wall created a new boundary between the properties either through the establishment of a consenta-

ble line or through adverse possession. The doctrine of consentable line is a rule of repose for the purpose of quieting title and discouraging confusing and vexatious litigation. *See* Elsesser, *Consentable Lines in Pennsylvania*, 54 Dick.L.Rev. 96 (1949) (providing a brief historical summary of the doctrine of consentable lines). In *Newton v. Smith*, 40 Pa.Super. 615 (1909), this court held that there were three requirements for the establishment of a binding consentable line by dispute and compromise: (1) a dispute with regard to the location of a common boundary line; (2) the establishment of a line in compromise of the dispute; and (3) the consent of both parties to that line and the giving up of their respective claims which are inconsistent therewith. *Id.* at 616. The court explained that if the parties to the consentable line take possession of the property up to the line and hold such possession for twenty-one years, the title becomes complete by adverse possession. In *Newton*, there was an absence of testimony as to the assent of the owner of the land. The court stated: "Having failed to show any assent on the part of . . . the owner of the land, . . . the plaintiff, we think, failed to establish any one the essentials of a consentable line or in any way his right to the land . . ." *Id.* at 619.[1] As one commentator has noted:

> It is apparent that the consent of the parties to be bound by the agreement and, consequently, to give up their respective claims which are inconsistent therewith, is a necessary requirement for the establishment of a consentable line, since there can be no binding agreement without a meeting of the minds.

Elsesser, *Consentable Lines in Pennsylvania*, at 97; *see also Beals v. Allison*, 161 Pa.Super. 125, 54 A.2d 84 (1947)

---

1. The court recognized that *"where such a line has been clearly established* and the parties on each side take possession or surrender possession already held up to that line, it becomes binding, under the application of the doctrine of estoppel." 40 Pa. Super. at 616. *See also Morrison v. Howell*, 37 Pa. 58 (1860) (consentable line was established between M and B as to the location of their boundary line; the boundary line was later affirmed in the presence of H, who subsequently bought from B; H made improvements; held: M's vendee was estopped to claim contrary to the consentable line established between M and B.

(in order to establish a binding consentable line the parties must intend to create a new line); *Omensetter v. Kemper,* 6 Pa.Super. 309 (1898) (defendant established the existence of a fence for thirty-five years, but failed to establish its character as a boundary line for the requisite period; there was no evidence indicating whether it was recognized by former owners as indicating the boundary or whether predecessors in title had claimed and held up to it).

■ In this case, there is insufficient evidence to prove consentable line by dispute and compromise. There is no evidence that the screening wall was built in compromise of a boundary dispute. Nor is there evidence of "the consent of both parties to that line and the giving up of their respective claims which are inconsistent therewith." *Newton v. Smith, supra* 40 Pa.Super. at 616.

In *Niles v. Fall Creek Hunting Club, Inc.,* 376 Pa.Super. 260, 545 A.2d 926, (1988), an en banc panel of this court recently addressed the issue of consentable line, noting that "[t]here are actually two ways in which one may prove a consentable line: by dispute and compromise, or by recognition and acquiescence." *Id.,* 376 Pa.Superior Ct. at 267, 545 A.2d at 930. The court in *Niles* also pointed out that the doctrine of consentable line has emerged as a separate and distinct theory from that of traditional adverse possession.

■ If adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for the period of time prescribed by the statute of limitations, they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one. *See Adams v. Tamaqua Underwear Co.* 105 Pa. Super. 339, 161 A. 416 (1932); *see generally,* 12 Am. Jur.2d, Boundaries §§ 85–90. In *Dimura v. Williams,* 446 Pa. 316, 286 A.2d 370 (1972), our supreme court held that the parties need not have *specifically* consented to the location of the line. The court stated:

It cannot be disputed that occupation up to a fence on each side by a party or two parties for more than twenty-one years, each party claiming the land on his side as his

own, gives to each an incontestable right up to the fence, and equally whether the fence is precisely on the right line or not. Our courts have always favored the settlement of disputes of this character by recognizing consentable lines established by the parties themselves, and this without regard to whether the line agreed upon conforms to the exact courses, distances and bounds of the original surveys. (citations omitted).

*Dimura*, 446 Pa. at 319, 286 A.2d at 371. The requirements, then, for establishing a binding consentable line by recognition and acquiescence are: (1) a finding that each party has claimed the land on his side of the line as his own; and (2) a finding that this occupation has occurred for the statutory period of twenty-one years. *Compare Newton v. Smith, supra*, with *Dimura v. Williams, supra.*

We must now determine whether the evidence shows consentable line by recognition and acquiescence. It is clear in this case that Mr. Cole has claimed the rectangular area beneath the stairway on his side of the screening wall as his own. This is evidenced by his adverse use of that area. As stated above, Mrs. Plott testified that she did not consent to Mr. Cole's installation of a water closet.

However, Mr. Cole has been in possession of the property in question only since 1983. Thus, a finding of consentable line would depend upon the actions of defendant's predecessors in interest, and whether it is proper in this case to tack their possession of the property to the defendant's possession so that the statutory period may be met. *Stark v. Lardin*, 133 Pa. Super. 96, 1 A.2d 784 (1938).

This issue was recently before this court in *Wittig v. Carlacci*, 370 Pa. Super. 584, 537 A.2d 29 (1988). In that case, Grace Kile and her husband acquired title to a ten-acre tract of land in 1951. In 1952, the property was surveyed and subdivided. In 1956 or 1957, the Kiles built a fence between the land on which their home was located (tract A) and the adjoining land (tract B). In 1959, they conveyed tract B to Mr. and Mrs. Major, who, in turn, conveyed it in 1961 to Mr. and Mrs. Carlacci. In 1964, the Kiles sold tract

A to Mr. and Mrs. Wittig. The Wittigs maintained the land up to the fence line until 1982, when the Carlaccis tore down a portion of the fence and removed a tree. The Carlaccis contended that their property line, as determined by survey and the deed description, was located a foot or more on the Wittigs' side of the fence. The Wittigs commenced an action in ejectment against the Carlaccis, claiming ownership of the disputed strip of land. *Id.*, 370 Pa.Superior Ct. at 587, 537 A.2d at 30–31.

The Wittigs alleged that they had acquired title by deed, or by adverse possession, or by a long-standing fence which constituted a consentable boundary line. The trial court found record title for the disputed strip of land was in the Carlaccis by virtue of their deed description and the description contained in the deed from the Kiles to the Carlaccis' predecessor in title. The Wittigs' claims of title by adverse possession or consentable line were rejected because the Wittigs had been in possession for only eighteen years. The court also held that the Wittigs "could not tack on the possession of their predecessor because there was no evidence that the Kiles had intended to effect an adverse and hostile possession of any part of the land which, several years after erection of the fence, they had conveyed to the Carlaccis' predecessor in title." *Id.*, 370 Pa.Superior Ct. at 588, 537 A.2d at 31.

On appeal, this court pointed out that in order for the Wittigs to claim title, it was essential that their predecessor's possession be tacked on to their eighteen years of possession. The evidence showed that, although the fence had been erected in 1956 or 1957, the Kiles' 1959 deed to the Carlaccis' predecessor in title (tract B) included the fence within the boundaries of the land conveyed, and, when the Kiles later conveyed to the Wittigs (tract A), the deed description did not include the land immediately adjacent to the fence. *Id.*, 370 Pa.Superior Ct. at 588, 537 A.2d at 31. The applicable law on tacking was stated as follows:

> The possession of successive occupants may be tacked, but only where there is privity between them. For our

purposes, "privity" refers to a succession of relationship to the same thing, whether created by deed or other acts or by operation of law. But a deed does not of itself create privity between the grantor and the grantee as to land not described in the deed but occupied by the grantor in connection therewith, although the grantee enters into possession of the land not described and uses it in connection with that conveyed. The deed, in itself, creates no privity as to land outside its calls. Nor is privity created by the bare taking of possession of land previously occupied by the grantor.

*Id.*, quoting *Castronuovo v. Sordoni*, 357 Pa. Super. 187, 515 A.2d 927 (1986) (citations omitted). Each predecessor must have claimed title to the property in dispute, and in transferring to his successor, must have purported to include it. *Castronuovo v. Sordoni*, 357 Pa.Super. at 193–94, 515 A.2d at 931. The *Wittig* court thus concluded that a grantee cannot tack his grantor's possession of land when the grantor does not convey such land to him; the period of the Kiles' occupancy therefore could not be tacked on to the eighteen years in which the Wittigs held possession of the land up to the fence. *Id.*, 370 Pa.Superior Ct. at 589–90, 537 A.2d at 32.[2]

Applying this analysis to the case before us, we can find no privity between Mr. Cole and his predecessors so as to preserve unity of possession. *Schrack v. Zubler*, 34 Pa. 38, 41 (1859); *Gerhart et ux. v. Hilsenbeck*, 164 Pa.Super. 85, 63 A.2d 124 (1949); *cf. Masters v. Local Union No. 472, United Mine Workers of America of South Fork*, 146 Pa.Super. 143, 22 A.2d 70 (1941). We find nothing in the record to indicate that any of Mr. Cole's predecessors ever asserted any right to ownership of the property in dispute.

**2.** The requirement of privity had its genesis in the notion that a succession of trespasses, even though there was no appreciable interval between them, should not, in equity, be allowed to defeat the record title. The "claim of right," "color of title" requirement of the statutes and cases was probably derived from the early American belief that the squatter should not be able to profit by his trespass. *See* F. Clark, *Law of Surveying and Boundaries*, (3d ed. 1959) § 561 at 568.

Additionally, we find no indication in the record that any of Mr. Cole's predecessors intended to convey anything more than what was set forth in their respective deeds. *Dimura v. Williams*, 446 Pa. at 319, 286 A.2d at 371. Privity is not created by the bare taking of possession of land previously occupied by the grantor, *Masters v. Local Union No. 472, United Mine Workers of America of South Fork*, 146 Pa.Super. 143, 22 A.2d 70 (1941), which is what Mr. Cole has done here. *See also Miles v. Pennsylvania Coal Co.*, 245 Pa. 94, 91 A. 211 (1914) (line created must be recognized and acquiesced in as a boundary by adjoining landowners); *Reiter v. McJunkin*, 173 Pa. 82, 33 A. 1012 (1896) (passim).

■ Nor was the evidence sufficient to show that Mr. Cole acquired title through adverse possession. It is only since 1986 that the area in question has been used adversely. In her reply to defendant's new matter and counterclaim, Mrs. Plott admits that she *permitted* the defendant and prior owners to use the area in question for dry storage, and her testimony to that effect is uncontroverted. *Vlachos v. Witherow*, 383 Pa. 174, 118 A.2d 174 (1955); *Klos v. Molenda*, 355 Pa.Super. 399, 513 A.2d 490 (1986); *see also Citizens' Electric Co. v. Susquehanna Boom Co.*, 227 Pa. 448, 76 A. 203 (1910) (when possession of land is permissive, with the consent of the owner, possession cannot ripen into title by the mere lapse of time).

We conclude that the trial court's finding—that "[t]he Plaintiff's predecessor, by erecting the division wall at this location, expressed their intention that this wall become the boundary between the two properties[ ]"—is not supported by credible evidence. *Norwich v. Beaver, supra; Bigham v. Wenschhof, supra.* Moreover, this finding reveals a possible misapprehension of fact by the trial court. Our review of the record reveals that it was Theo Plott who erected the screening wall (via her son-in-law), and *not* her predecessor, Katie Plott. The trial court states:

> In *Medera [Medara]*, the Court held that where a *common owner* erects a dividing wall between twin houses, that wall becomes a party wall, and the center line of the

wall, is the dividing line between the properties. *Medera* [*Medara,* 187 Pa.] at 439 [41 A. 322].

As we have pointed out, it was not the common source of title, Katie Plott, who erected the wall; rather, it was Theo Plott who had the wall built for privacy purposes. To the extent that the trial court's holding was based on what we perceive to be a factual error, it is unsupported by either the record or the law.

We reverse that part of the trial court's order declaring defendant the owner of the property in question, and we order defendant ejected from the area in question. We note that our disposition does not affect the easement in favor of the owner of 155 Ann Street.