J-S69044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NEIL N. JASEY AND MILA M. JASEY, HIS WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| POCONO MOUNTAIN WATER FOREST COMMUNITY ASSOCIATION, ITS HEIRS, EXECUTORS, ADMINISTRATORS, ASSIGNS AND ANY AND ALL OTHER PERSONS CLAIMING RIGHT, TITLE OR INTEREST IN OR TO THE HEREIN DESCRIBED REAL PROPERTY OTHER THAN PLAINTIFF'S | |
| Appellee | No. 1033 EDA 2014 |

Appeal from the Judgment Entered April 29, 2014
In the Court of Common Pleas of Pike County
Civil Division at No: 948 Civil 2009

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and STABILE, J.

MEMORANDUM BY STABILE, J.:          **FILED FEBRUARY 24, 2015**

Appellants, property owners in a planned community known as Pocono Mountain Water Forest, appeal from the April 29, 2014 judgment entered in the Court of Common Pleas of Pike County in favor of Appellee, Pocono Mountain Water Forest Community Association (PMWFCA or the Association).[1]  Appellants contend the trial court erred in determining that

---

[1] Appellants include owners of properties in the community.  The property owners initiated separate quiet title actions against the Association.  The
*(Footnote Continued Next Page)*

the property owners' lots did not extend to the shoreline of the lake that sits within the community. The lake did not exist when the plat map was prepared and was designated on the map as "Water Forest Lake

_(Footnote Continued)_ _____

parties did not consolidate their cases but agreed that two of the cases would proceed jointly to a non-jury trial and that the trial court's decision would apply to all of the cases. The Appellants whose cases were heard by the trial court include Charles and Sylvia Squires, owners of Lot 261, and Joseph A. and Marie-Eleana D'Aiello, owners of Lot 262, as those lots are designated on a plat map prepared in 1972 and recorded in 1973. (A portion of the plat map showing Lots 261 and 262 and the "proposed shoreline" follows. Complaint of Appellant, Amelie Tseng, 5/12/09, Exhibit A (enlarged).) In this Memorandum we shall refer to all Appellants jointly where appropriate and to the Squires, to the D'Aiellos, and to the other Appellants specifically where appropriate.



(Proposed)." Complaint of Appellant, Amelie Tseng, 5/12/09, Exhibit A.

Upon review, we affirm.

Following a non-jury trial on November 4, 2013, the trial court issued an order with the following Findings of Fact:

1. [Appellants], Charles Squires and Sylvia Squires, own a property at 104 Lakewood Drive, also known as Lot No. 261, Section No. 5 in the Poconos Mountain Water Forest subdivision.

2. [Appellants], Joseph D'Aiello and Marie-Eleana D'Aiello, own a property at 106 Lakewood Drive, also known as Lot No. 262, Section No. 5 in the Pocono Mountain Water Forest subdivision.

3. [Appellee], Pocono Mountain Water Forest Community Association [hereinafter PMWFCA], is a non-profit corporation.

4. In 2009, [Appellants] initiated Actions in Quiet Title against PMWFCA claiming that they have a superior interest in a disputed strip of land adjoining their lots and contiguous to Water Forest Lake.

5. All parties have agreed that a determination with respect to the land adjoining lots 261 and 262 would be binding upon the remaining [Appellants] who are similarly situated.

6. A non-jury trial was held on November 4, 2013.

7. Pocono Mountain Water Forest Corporation [hereinafter PMWF Corp.] was the developer of the Pocono Mountain Water Forest Subdivision.

8. PMWF[] Corp. oversaw the creation of a plat map, the "final Plan" of Section 5 of the subdivision dated November 20, 1972, and filed with the Pike County Recorder's Office in 1973. [Appellants'] Exhibit 1.

9. Because Water Forest Lake had not yet been constructed at the time the plat map was created, a proposed shoreline appears on the map.

- 3 -

10.   The plat map depicts each parcel described both by metes and bounds and area in square feet.  The sidelines of each parcel extend past the rear boundary, meeting the proposed shoreline.  The land between the rear boundary line of each parcel and the shoreline is not labeled and constitutes the area of disputed ownership in this action.

11.   Both lots 261 and 262 were included in the group of lots intended to be closest to the lake; thus, these plots adjoin the unlabeled strip of land between the rear boundary line and the proposed shoreline.

12.   During the non-jury trial, each party presented expert witnesses in the field of land surveying.  Glenn Monteleone appeared for [Appellants] and Barry Tompkins appeared for [Appellee].

13.   The area per parcel listed on the plat map and the actual area within the metes and bounds descriptions on the map are not equivalent.

14.   Mr. Monteleone testified that the area per parcel listed on the map matches more closely the combined area of the parcel an strip of land than the parcel alone, concluding that the lots run to the lakefront.

15.   Mr. Tompkins testified that the parcel size is indicated by the metes and bounds on the map and he believes that the area was calculated in error.

16.   Mr. Tompkins found that the monuments on parcels 261 and 262 matched the metes and bounds descriptions, concluding that the lot owners did not own the strip of land between the rear lot lines and the lake.

17.   Mr. Monteleone and Mr. Tompkins both testified that no dimensions are listed on the plat map for the property between the rear lot lines and the proposed shoreline.

18.   Mr. Tompkins further testified that traditionally, if the sidelines were meant to indicate the continuation of the property past the rear line, there would be a note on the plan explaining the drafters' intent[,] or plusses and minuses

would appear to indicate the distance of the unknown area between the rear lot line and the intended lakefront.

19.     Both experts testified that monuments appear along the rear lot lines, but there are no pins along the proposed shoreline.

20.     Both experts testified that within the surveying community there is an accepted hierarchy followed when a conflict exists in re-tracing or re-establishing boundaries. Pursuant to the hierarchy, monumentation followed by directions obtained from documents are relied upon before area is considered.

21.     On April 21, 1973, PMWF Corp. deeded Lot No. 261 to Theodore and Gerlinde Sly. [Appellants'] Exhibit 3.

22.     The Sly Deed describes Lot 261 using both the metes and bounds description and the area on the plat map.

23.     On August 29, 1974, PMWF Corp. entered a lease agreement with Theodore and Gerlinde Sly, leasing to the Slys the plot of land located between Water Forest Lake and Lot 261, and bounded by extension of the side lines of Lot 261. [Appellants'] Exhibit 4.

24.     On March 30, 1976, PMWF Corp. conveyed to PMWFCA all of the property it owned including "all of the amenities, common areas, green areas, green belts, roads, lakes, and unsold lots situated at the recreational development . . . unless same are specifically excepted out herein." [Appellants'] Exhibit 7.

25.     On June 9, 2003, PMWFCA conveyed Lot 262 to Joseph and Marie-Eleana D'Aiello. [Appellants'] Exhibit 5.

26.     The D'Aiello Deed describes said property as "Lot 262, Section 5, Pocono Mountain Water Forest as recorded in the Office for the Recording of Deeds in Pike County . . . "

27.     The other deeds conveying lands from PMWFCA describe the properties by lot number, as described in the D'Aiello Deed.

28. At trial [Appellants] presented three witnesses and [Appellee] presented one witness in addition to the expert witnesses that appeared for each party. For [Appellants], Joseph D'Aiello, John Rogers, and Susan Hull testified. Theodore Wetzel testified for [Appellee].

29. Joseph D'Aiello testified that he believed he was purchasing lake front property based on a copy of minutes from a PMWFCA board meeting listing a "lake front property" for sale. [Appellants'] Exhibit 6.

30. Mr. D'Aiello testified on cross-examination that he had a survey completed after purchasing the property and was advised that the lot did not extend to the lake, [Appellants'] Exhibit 2), but he never brought an action to rescind the contract.

31. Theodore Wetzel, PMWFCA President, testified that he signed the D'Aiello deed on behalf of the Association and that the deed conveyed the parcel measured by metes and bounds.

32. Mr. Wetzel further testified that Mr. D'Aiello was aware that the lot didn't extend to the lake.

33. John Rogers testified that he helped prepare the 1972 plat map while working for Robert E. [Felker].

34. At the time of the map's creation Mr. Rogers was not a licensed surveyor.

35. Mr. Rogers testified that he believed the rear lot lines were not intended to be a rear boundary, but were included to create mathematical closure, so that the pins could be reproduced.

36. Susan Hall testified that she works as a closing administrator for Ambassador Abstract.

37. Ms. Hall presented a chart listing original prices and tax assessments of lots in Water Forest Lake, comparing the lots in question to inner lots. [Appellants'] Exhibit 10.

38. Mr. Wetzel additionally testified that he was involved in PMWFCA when they negotiated the transfer of Pocono Mountain Water Forest properties with PMWF Corp. He testified that the lake existed at this time and that the disputed strip of land was part of the common area transferred in the 1976 agreement.

Trial Court Order, 2/11/14, at 1-6.

In its analysis following the findings of fact, the trial court first recognized that "[t]he burden of proof in an action to quiet title is on the plaintiff. In such an action, the plaintiff can recover only on the strength of his or her own title and not upon the weakness of the defendant's title." *Id.* at 6 (quoting *Montrenes v. Montrenes*, 513 A.2d 983, 984 (Pa. Super. 1986) (citations omitted)). The trial court reviewed the evidence and weighed the witnesses' credibility, concluding Appellants failed to prove superior title to the strip of land located around Water Forest Lake, land that was not within the metes and bounds, with references to monuments, of the parcels as they appeared on the plat map. *Id.* at 6-7. The trial court recognized the conflict between the square footage of the area listed for each parcel and the square footage of the area determined by using the metes and bounds descriptions. However, the trial court also recognized the hierarchy of information for surveying property. *Id.* at 7, citing Appellee's Exhibit 5. In descending order of importance, that hierarchy recognizes: "1) Call for survey; 2) Monuments; 3) Direction; 4) Distance (direction and distance are in reverse order outside of Pennsylvania); 5) Area; and 6) Coordinates." *Id.* The court stated:

> The plat map clearly indicates metes and bounds for each parcel that, according to the expert witnesses, are consistent with pins along the rear boundary lines of the parcels. According to the above reconciliation principles, area need not be considered because these other elements are given priority in determining boundaries. The court is not persuaded by [Appellants' expert's] conclusion that area is controlling despite the plat map with metes and bounds descriptions and the existence of monuments along the rear property lines.

*Id.*

In addition, the trial court noted its determinations of credibility, finding that Appellants' witness John Rogers lacked credibility. Rogers, who was not a licensed surveyor when he prepared the plat map in 1972, suggested that the lots were intended to extend to the lake and testified he included rear lines only to create mathematical ties. *Id.* at 8. The trial court was unconvinced because Rogers "could not explain why the map did not identify the shoreline as the intended boundary or note that the lots were supposed to extend." *Id.* Appellee's expert Tompkins, on the other hand, explained that if properties extended to an uncertain edge, such as a lakefront, that fact would normally be noted on the plan. For the properties to extend to the lake, the shoreline would have to be labeled as the property line; using plus (+) or minus (-) symbols would indicate that the sidelines extend the property boundaries to the shoreline. *Id.*

The trial court also concluded that the Sly Deed for Lot 261, currently owned by the Squires, did not support Appellants' contention. The deed included the metes and bounds indicated on the plat map with references to

monuments, and specifically referenced the metes and bounds along the rear boundary line. Even though the area stated on the plat map represented square footage more in line with the area based on the "proposed shoreline" as its boundary rather than the rear boundary line, the fact remains that metes and bounds, as well as monuments, trump area in the surveying hierarchy. *Id.* With respect to the lease between the PMWF Corp. and the Slys, the trial court determined that the lease clearly identified land distinct from the Slys' lot, and "[i]f the Slys owned the land described [as the land between the lake and Lot 261], there would be no reason for this lease to exist." *Id.* at 9.

The trial court also dismissed Appellants' assertion that the area between the rear boundary lines and the proposed shoreline belonged to the property owners because there was no express reservation of the land to the developer. *Id.* While acknowledging the lack of an express reservation, the trial court noted that there was no evidence that the land was reserved to the parcel owners. Further, with the exception of the Sly Deed, the deeds for the parcels in question simply refer to the lot number and do not include references to the specific boundaries. "Again, it is the [Appellants'] burden to prove the superiority of their title. They cannot prevail on the weakness of [Appellee's] title." *Id.*

Finally, the trial court considered the testimony of Theodore Wetzel who testified he was a member of the Association board in 1976 when the

property transfer occurred from PMWF Corp. to the Association. Wetzel testified that the common/green areas conveyed to the Association included the area around the lake. *Id.* Because Appellants did not provide evidence to the contrary to support their argument that the disputed land was intended to be part of each lot, the trial court concluded that the land in dispute was conveyed to the Association by virtue of the 1976 deed. *Id.* at 9-10.

Appellants filed a motion for post-trial relief, which was denied by the trial court on March 3, 2014, except for Appellants' request for transcription of the notes of testimony from the November 4, 2013 trial. Appellants filed an appeal from the March 3 order and this Court remanded with direction to praecipe the Prothonotary to enter judgment on the order. Judgment was entered on April 29, 2014. Appellants filed their statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued its Rule 1925(a) opinion on May 20, 2014, reiterating its factual findings and analysis while responding to the specific errors complained of in Appellants' 1925(b) statement.

In their brief on appeal, Appellants present two issues for this Court's consideration:

1. Did the trial court err in concluding that a developer did not intend for certain lots to be lakefront lots when the only deed introduced into evidence from the developer to a third-party purchaser unambiguously established the intent of the developer to convey property that extends to the lake and contains a specific square footage, the individual who drafted

the subdivision map for the developer testified unequivocally that the lots were intended to be lakefront lots, and the lots were marketed and sold as lakefront lots?

2. Did the trial court err in implicitly concluding that a developer intended for certain disputed land to be included in the common areas conveyed to a planned community association by virtue of a turnover deed when the turnover deed does not specifically include the disputed land, the association merely assumed that the disputed land was part of the association's common areas included in the deed, and the association's own expert testified that there was no evidence to show that the association owned the disputed land?

Appellants' Brief at 4.

This Court has recognized that the standard of review for non-jury proceedings generally is as follows:

> Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal eror that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the fact[-]finder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Agostinelli v. Edwards*, 98 A.3d 695, 704 (Pa. Super. 2014) (quoting *Lynn v. Pleasant Valley Country Club*, 54 A.3d 915, 919 (Pa. Super. 2012)). "The court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, 'unless it appears that the

court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence.'" *Hart v. Arnold*, 884 A.2d 316, 331 (Pa. Super. 2005) (quoting *Fudula v. Keystone Wire & Iron Works, Inc.*, 424 A.2d 921, 927 (Pa. Super. 1981)).

In *Corban v. Cowan*, 716 A.2d 614 (Pa. Super. 1998), this Court specifically addressed the review of a trial court's quiet title decision, explaining:

> When reviewing a trial court's decision in a quiet title action, we must determine whether the court's findings of fact are supported by competent evidence. *Thompson v. Railroad Preservation Society*, 417 Pa. Super. 216, 220-22, 612 A.2d 450, 452 (1992). The trial court's decision will not be reversed absent an error of law or capricious disregard of the evidence. *Id.*
>
> An action to quiet title may be brought "where an action of ejectment will not lie, to determine any right, lien, title or interest in the land." Pa.R.C.P. 1061(b)(2). "The question of what is a boundary line is a matter of law, but where a boundary line, or corner, is actually located is a question for the trier of fact." *Plott v. Cole*, 377 Pa. Super. 585, 589, 547 A.2d 1216, 1219 (1988). "The primary function of the court faced with a boundary dispute is to ascertain and effectuate the intent of the parties at the time of the original subdivision." *Id.*

*Id.* at 617.

In their first issue, Appellants argue the trial court erred in concluding that the developer did not intend that the lots in question were lakefront lots. Appellants present a four-part argument in support of their position.

Appellants first assert that the trial court erred by disregarding the language of the Sly Deed, which Appellants contend unambiguously

- 12 -

establishes the developer's intent that the property extended to the lake and contained specific square footage. The Sly Deed contains the following property description:

> All certain lot/lots, parcel or piece of ground situate in the Township of Dingman, County of Pike, and State of Pennsylvania, being Lot/Lots No. 261, as shown on map entitled subdivision of Section 5, Pocono Mountain Water Forest Corporation, on file in the Recorder's Office at Milford, Pennsylvania in Plot Book No. 10, Page 52. Said lot more particularly described as follows: **BEGINNING at an iron pipe** on the southerly side of a 50.00 foot street known as Lakewood Drive as shown on a map entitled "Final Plan, Section 5, Pocono Mountain Water Forest", dated 20 Nov., 1972, **said iron pipe being also the most northeasterly corner of Lot 262** as shown on said map; **thence along said southerly side of Lakewood Drive** North 54 degrees 34 minutes 59 seconds East **65.00 feet to a point**; **thence by the same on a curve to the right having a radius of 1107.81 feet, an arc length of 106.00 feet to an iron pipe; thence along Lot 260** and also along the center line of a 30.00 foot private drive as shown on said map South 29 degrees 56 minutes 05 seconds East **316.35 feet to an iron pipe**; **thence along the reserved shoreline of proposed "Water Forest Lake" as shown on said map** South 37 degrees 55 minutes 44 seconds West **69.35 feet to an iron pipe; thence by the same** South 68 degrees 37 minutes 46 seconds West **76.46 feet to an iron pipe; thence along said Lot 262** North 35 degrees 25 minutes 01 seconds West **321.29 feet to the place of Beginning. CONTAINING 57,472 square feet.**

N.T. Trial, 11/4/13, Appellants' Exhibit 3, 11/4/13 (emphasis added).

Despite Appellants' protestations, the metes and bounds description in the deed, using iron pipes as monuments, matches the plat map and does not include the "reserved shoreline," but rather reflects that the rear boundary of Lot 261 abuts the reserved shoreline as portrayed on the plat map. Again, the surveyors' hierarchy puts monuments ahead of area,

- 13 -

making the mention of square footage of lesser importance than the metes and bounds description. Further, while Appellants suggest that the square footage is controlling, they ignore the fact that there are no measurements on the plat plan that can be used to come up with the square footage mentioned in the deed. The plat map reflects sidelines that extend to the proposed lake but does not include any measurements for those sidelines. Further, there is no measurement listed for the "proposed shoreline" contiguous to Lot 261 or any other lot. Instead the rear boundary is described as: "thence along the reserved shoreline of proposed 'Water Forest Lake' as shown on said map South 37 degrees 55 minutes 44 seconds West **69.35 feet to an iron pipe**; thence by the same South 68 degrees 37 minutes 46 seconds West **76.46 feet to an iron pipe**." ***Id.*** (emphasis added). Clearly, there are two separate measurements along the rear boundary within the description, the first being 69.35 feet to a pipe and then along a slightly different southwesterly direction an additional 76.46 feet to an iron pipe. The plat map reflects those measurements. There are no measurements for the "reserved shoreline," either on the lake side of the shoreline or along the property side of the shoreline. Appellants' reliance on the mention of the reserved shoreline and on the mention of square footage does not outweigh the metes and bounds description based on monuments indicated on the plat map. Appellants' claim that the trial court disregarded the Sly Deed fails.

Appellants next argue that the trial court erred by disregarding the testimony of John Rogers, the individual who prepared the 1972 plat map. A review of the trial court's findings of fact belies this assertion. The trial court did not ignore Rogers' testimony. Rather, the trial court concluded that his testimony lacked credibility. His testimony that the lots were to extend to the proposed shoreline was contradicted by the metes and bounds description in the Sly Deed. Moreover, his testimony regarding the use of sidelines and his failure to use plus or minus signs as an indication that property extended beyond boundaries established by monuments was refuted by Appellee's expert, Barry Tompkins. As stated above, "The court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, 'unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence.'" *Hart*, 884 A.2d at 331. We find no abuse of discretion, lack of evidentiary support, or capricious disregard of the evidence on the part of the trial court. Appellants' argument with respect to the Rogers testimony fails.

Appellants next assert trial court error for discounting alleged marketing of the lots as "lakefront properties" as well as the higher sale prices and tax assessments of the subject properties compared to other properties in the community farther from the lake. Our review of the record does not support Appellants' position. The reference to the marketing and

sale of the properties as "lakefront properties" was made in the course of the testimony Joseph D'Aiello, the owner of Lot 262. D'Aiello testified that the lot he purchased was described in Association minutes as a lakefront property for sale for $60,000. However, D'Aiello, who subsequently purchased the property for $50,000, acknowledged that a survey he commissioned on the property revealed that the property did not extend to the shoreline, weakening his credibility in the eyes of the trial court. Trial Court 1925(a) Opinion, 5/20/14, at 12. Further, as Appellee notes, Appellants did not produce evidence that a lake front lot must extend to the edge of the water line. Appellee's Brief at 25. In support of that position, Appellee cites the testimony of Association President Theodore Wetzel who agreed that there were no lots between D'Aiello's lot and the lake so D'Aiello's property was as close as that lot could get to the lake. N.T. Trial, 11/4/13, at 111.

Regarding the sale prices of lots and the tax assessments, the trial court did not, as Appellant suggests, discount them. The trial court admitted into evidence the exhibit offered by Appellants that listed two sets of lots, one near the water and the other farther away from the lake. The exhibit reflected that the properties closer to the lake garnered greater selling prices and carried higher tax assessments. However, that in and itself does not prove that the properties in question extend to the lake shore. Trial Court 1925(a) Opinion, 5/20/14, at 6. The trial court afforded "this evidence

appropriate consideration, concluding that it does not substantially advance [Appellants'] claim of title to the disputed land." *Id.* at 7.

We do not find any basis for relief with respect to the marketing of lots as lakefront property or the higher sales prices and tax assessments of the properties in question. Therefore, Appellants' third claim fails.

In the fourth sub-argument of their first issue, Appellants contend the trial court erred in determining the monuments were conclusive while disregarding evidence to the contrary. Appellants assert that ignoring the references to specific square footage for each lot renders the reference to square footage meaningless. We cannot agree. First, the only property conveyed by a deed that mentioned square footage was Lot 261, first conveyed by the Sly Deed and most recently conveyed to Appellants Charles and Sylvia Squires. The remaining deeds refer to the Lot number only. ***See, e.g.***, Complaint of Appellant, Amelie Tseng, 5/12/09, Exhibit B; Complaint of Appellants, Ronald and Katherine Pietranowicz, 5/12/09, Exhibit B; Complaint of Appellants, Neil and Mila Jasey, 5/12/09, Exhibit B; Complaints of Appellants, Jeffrey Rothstein and Allen Doane, 5/12/09, Exhibit B;[2] Complaint of Appellants, Albert and Karen Ondira, 5/12/09, Exhibit B; Complaint of Appellants, Joseph and Marie-Eleana D'Aiello,

_____

[2] Appellants Rothstein and Doane purchased Lots 353 and 354 and filed separate complaints with respect to each lot.

- 17 -

5/12/09, Exhibit B; Compliant of Appellants, Donald and Eleanore O'Brien, 5/12/09, Exhibit B; and Complaint of Appellants, Andrew and Alicia Squires, 5/12/09, Exhibit B; Complaint of Appellants, David MacNutt and Janet Jochem, 5/12/09, Exhibit B.[3]  The Sly Deed contained metes and bounds with reference to monuments.  Again, monuments rank higher than area in the surveying hierarchy.  Further, as noted previously, there are no numbers on the plat map that account for the square footage listed.  *See* fn. 1.  We find no error on the part of the trial court for determining the location of the lots based on monuments.  There is no basis for relief based on any of Appellants' arguments raised in their first issue.

In their second issue, Appellants allege trial court error for concluding that the areas between the subject lots and the lake constitute common areas conveyed to the Association in 1976.  Appellants argue that the disputed land is not specifically described as property conveyed by the deed

_____

[3] The deed dated May 29, 2003 for Lot 352, purchased by Appellants David MacNutt and Janet Jochem, refers to the property being conveyed as Lot 352 in the 1972 plat map.  Complaint of Appellants MacNutt and Jochem, 5/12/09, Exhibit B at 1.  The deed later notes that the premises are "more particularly described pursuant to a recent survey" and includes metes and bounds measurements that refer to points at or near the water's edge of Water Forest Lake.  *Id.*  However, those metes and bounds descriptions do not appear on the 1972 plat map. N.T. Trial, 11/4/13, Appellants' Exhibit 1. Further, there is so suggestion that the description in any deed for Lot 352 prior to 2003 contains any description beyond the lot number.  It is not for this Court to speculate on this matter when the parties have not raised it and the record is silent as to prior deeds for the lot.

and does not fall within any other express reservation. Appellants' Brief, at 40. We find no merit in Appellants' argument.

The March 30, 1976 deed from PMWF Corp. conveys various parcels to the Association, "excepting and reserving thereout and therefrom the lots as they appear in Schedule 'A', attached hereto and made a part hereof." Association's Answer and New Matter to Tseng Complaint, 6/11/09, Exhibit A at 5. "It is the purpose and intent of this indenture to convey . . . all of the [lands] including but not limited to those [lands] presently owned by [PMWF Corp.] . . . all of the amenities, common areas, green areas, green belts, roads, lakes and unsold lots . . . unless same are specifically excepted out herein." *Id.* at 7. All of the lots involved in this appeal, with the exception of Lot 262 owned by Appellants D'Aiello, which was an "unsold lot," are listed on Schedule "A." *Id.* at Schedule A.[4]

We have already determined that the trial court did not commit error by adopting the monuments and metes and bounds descriptions of the lots appearing on the plat map. Therefore, there is no basis for finding that the areas between the waterline of the lake and the rear boundaries of the those

_____

[4] The June 9, 2003 deed from the Association to the D'Aiellos reflects that the lot was conveyed by PMWF Corp. to the Association by the March 30, 1976 deed. In other words, the Lot 262 was the only lot involved in this appeal that was not conveyed from PMWF Corp. to other owners prior to the transaction of March 30, 1976. As mentioned previously, Joseph D'Aiello testified that a survey he obtained after purchasing Lot 262 revealed that the lot did not extend to the lake.

lots, as established by the monuments and metes and bounds descriptions, do not constitute common areas conveyed to the Association under the March 30, 1976 deed. Further support is found in the August 29, 1974 lease between PMWF Corp. and the Slys for "that certain plot of land . . . located between Water Forest Lake and Lot 261 . . . and further bounded by an extension of the side lines of said Lot 261." N.T. Trial, 11/4/13, Appellants' Exhibit 4. Again, if the land between the lake and Lot 261 had been conveyed to the Slys when they purchased Lot 261 from PMWF Corp. on April 21, 1973, the lease would have been a redundancy. There are no other leases of record granting any rights to the land between Water Forest Lake and any of the other lots involved in this appeal, bolstering the argument that PMWF Corp. retained all title and rights to those lands and conveyed them to the Association by virtue of the March 30, 1976 deed. Therefore, despite Appellants' claims to the contrary, there is no "clash of boundaries in two conveyances from the same grantor." Appellants' Brief at 42. There was no prior grant of the disputed land. As the trial court determined, the lots conveyed to Appellants had rear boundaries reflected on the plat map and did not extend to the waterline. Appellants' second issue fails for lack of merit.

As noted at the outset, "[t]he burden of proof in an action to quiet title is on the plaintiff. In such an action, the plaintiff can recover only on the strength of his or her own title and not upon the weakness of the

defendant's title." ***Montrenes***, 513 A.2d at 984. Further, review in this non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. ***Agostinelli***, 98 A.3d at 704. We find that the findings of the trial court are supported by competent evidence and conclude that the trial court did not commit error in the application of law. Therefore we affirm the judgment of the trial court.

Judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2015