## ADAMSON *v.* POTTS.

To establish a consentable line between owners of adjoining tracts, knowledge of, and assent to the line as marked must be shown in both parties.

In error from the Common Pleas of Indiana county.

*Oct.* 20. This was an ejectment tried at a special court, before GRIER, P. J. The plaintiff and defendant respectively claimed under adjoining warrants, two tracts of land, included in a survey of a block of twenty-five warrants, of which the evidence was very distinct that the interior lines had not been marked on the original survey of the block. The plaintiff gave evidence of the location of his line on the land, according to the warrant and draft returned; the defendant claimed title to a line marked on the land included in the plaintiff's draft of survey, which line was shown to have been marked in 1811–12. The land included between the lines claimed by plaintiff and defendant had remained uncultivated, no actual possession having been shown by either party. The plaintiff purchased in 1836, and in 1837 ran a line round his land, following the marked line as one of the boundaries.

His honour instructed the jury, if they found this was not the original line of the tracts marked on the land by the surveyor, they would inquire next, if it was ever made by the owners of the adjoin-

ing surveys as a consentable line? When parties, for the purpose of settling a disputed boundary, agree upon a line, courts will usually hold them to it, unless some considerable mistake has been made from ignorance of facts by one or both parties; or if a line be fixed by mistake, and each hold and clear up to it for twenty-one years, then the statute of limitations is a bar, however great the mistake may have been; or if an owner of land, by mistake, shows a boundary to one who purchases, and pays his money or expends labour in improvement, in consequence of such mistaken representation, equity will not permit him to rectify the mistake at his neighbour's expense; but if a man who has purchased a tract of land takes a surveyor to find his lines, and, by mistake, assumes some line he may find marked on the ground as his boundary, and may call it such while labouring under this mistake, this will not forfeit his land or give a title to his neighbour, unless he has acted under this mistake twenty-one years, and treated himself as out of possession, and his neighbour as in possession for that time. Is there any evidence to bring this case within either category mentioned, whereby the plaintiff is estopped from claiming his land? There is evidence that the plaintiff, at one time, was led to suppose, from a survey made for him by Mr. Riley, that this 1812 line was his boundary, but none that I know of, that he has treated it as such for twenty-one years, or ever agreed with the owner of the adjoining tract to establish this as their mutual boundary, or that the owner of the adjoining tract ever knew that plaintiff had even laboured under this mistake, if it be one. It will be for you to decide, therefore, whether this line of 1812 was run from an original corner of these tracts on the ground; if so, defendants would be entitled to your verdict. If not, and if you are without evidence by whose authority the line was erroneously run; and if you have no evidence that it was established as a corner line, or that plaintiff has been out of possession and defendants in possession for twenty-one years; and if the plaintiff merely was mistaken when he supposed it his line, and defendant has sustained no injury in consequence of such mistaken belief, then the plaintiff will be entitled to your verdict for all the land, up to the true boundary of the tracts.

Assignment of errors. 1. The court mislead the jury, in saying that " when parties, for the purpose of settling a disputed boundary, agree upon a line, courts will usually hold them to it, unless some considerable mistake has been made.'

" 2. The court erred in instructing the jury that Jacob Potts, the plaintiff below, was not bound by the line he adopted and surveyed as the boundary between himself and the defendants below, unless the

possession had been held adversely against him for twenty-one years, or the defendants below had been put to expense, &c., in consequence of the mistake, if such it was."

*Banks* and *Buffington*, for plaintiff in error.—The judge misled the jury, by saying a mistake would avoid the line, that is settled not to be so.   Perkins *v.* Gay, 3 Serg. & Rawle, 327.   It is true there was no direct proof of assent, but there was sufficient to leave to the jury to show assent, unless they had supposed it would not be binding if mistaken.

*Foster*, contrà.—Our acquiescence was for a short time under a mistake, on which no one acted or relied.   Certainly a man is not to lose his property, because at his purchase he was misled by a line on the ground, and took that as his boundary, when nothing was done by either party, on the strength of such a mistake—to rectify which a suit was brought before any possession barred the right.   It is an equity arising from an expenditure authorized by the acts of the parties, or a compromise of rights, which is the origin of the rule as to consentable lines.

*Oct.* 24.   BURNSIDE, J.—In Perkins *v.* Gay, 3 Serg. & Rawle, 327, the Common Pleas laid it down in general terms, that if, at the time of an agreement to establish a consentable line, the parties labour under a mistake as to their respective rights, they will not be bound.   The Supreme Court held this instruction to be erroneous; they said, no boundary of the sort could in any case prevail, if it were law, for the consideration of the agreement is, in ninety-nine cases out of a hundred, the settlement of a dispute arising from ignorance of the parties, or misapprehension on both sides.   If there had been evidence that the owners of the surveys had established the line to which the defendant claimed, the direction of the learned judge, on the principles settled in Perkins *v.* Gay, would not have been correct.   The line to which the defendant claimed cut off forty-one perches of the plaintiff's survey; when or how that line was made no one could tell.   The owners of the surveys resided in Philadelphia.   Settlers first went upon the land without the license or authority of the owners.   They afterwards became tenants.   The line was said to be run by William P. Brady, for whom, or by whose authority or direction, did not appear.   It was said to be an old line.   The land was unimproved between this line and the true line.   The true line, or rather the place for the true line, could not be ascertained without running the north end of the block

of tracts which bounded on the purchase line. Whether Brady did run it, either for the owners or settlers, or under what circumstances, did not appear. A consentable line is fixed upon an overture or agreement between the owners. We, therefore, think the defendant was not injured by the instruction complained of, " that when parties, for the purpose of settling a disputed boundary, agree upon a line, courts will usually hold them to it, unless *some considerable mistake has been made;*" because it did not appear that the owners of the survey ever made or knew of the line actually run on the ground, cutting off forty-one perches of one survey, and adding it to the other the whole distance along one side of the survey.

The judgment is affirmed.