## Newton *v.* Smith, Appellant.

*Land law—Consentable line—Adverse possession—Estoppel.*

A consentable line may be established by parole, which will, under certain circumstances, bind the parties to an assent thereto. In order, however, to make such a line binding, it is necessary that there should be first, a dispute; second, the establishment of a line settling the dispute; third, the consent of both parties to that line and the giving up of their respective claims which are inconsistent therewith. If the parties to such consentable line take possession to the line and hold such possession for twenty-one years, the title becomes complete by adverse possession. Where such a line has been clearly established and the parties on each side take possession or surrender possession already held up to that line it becomes binding under the application of the doctrine of estoppel.

Argued May 4, 1909. Appeal, No. 176, April T., 1909, by defendants, from judgment of C. P. Jefferson Co., Aug. T., 1908, No. 233, on verdict for plaintiff in case of George W. Newton v. Kate M. Smith et al. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Ejectment for $8\frac{3}{100}$ acres of land in Washington township. Before REED, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in refusing binding instructions for defendants.

*A. L. Cole*, with him *C. C. Benscoter*, for appellant.

*W. L. Calkins,* with him *W. C. Pentz* and *Charles Corbett,* for appellee.

OPINION BY BEAVER, J., October 11, 1909:

Plaintiff brought his ejectment against defendant, who was a married woman, and her husband for a piece of land bounded on the one side by the land described in his deed and on the other by a parallel line, alleged to be a consentable line established and agreed to by them, as run by a surveyor who fixed the same as the boundary between their respective adjoining tracts of land. At the trial the defendant asked for binding instructions and subsequently for judgment for the defendant, non obstante veredicto. The point was refused and subsequently the motion for judgment denied. The action of the court as to both of those requests of the defendant is assigned for error.

That a consentable line may be established by parol which will, under certain circumstances, bind the parties who assent thereto, is clearly established in Pennsylvania. In order, however, to make such a line binding, it is necessary that there should be, first, a dispute; second, the establishment of a line settling the dispute; third, the consent of both parties to that line and the giving up of their respective claims which are inconsistent therewith. If the parties to such consentable line take possession to that line and hold such possession for twenty-one years, the title becomes complete by adverse possession. It has been held, however, that where such a line has been clearly established and the parties on each side take possession or surrender possession already held up to that line, it becomes binding, under the application of the doctrine of estoppel.

In the present case, there was little doubt as to a dispute between the parties to this suit—not perhaps a dispute as to the lines of the land conveyed to the plaintiff by his deed from John W. Smith, a brother of one of the defendants. The plaintiff, however, claimed that the lines in his deed did not embrace all the land intended to be conveyed to him and that there was a debatable strip between the line of his deed and

the line to which the defendants had the right to claim. This claim, however, was stoutly resisted by the defendants, and a surveyor was called to compose the difficulty and settle the dispute. This was finally claimed to be accomplished by a rather circuitous method which sought to determine where the line of the plaintiff's property, as it was intended to be conveyed, really was. It was asserted by the plaintiff, and borne out by his testimony, that such a line was established, and that he and the husband of the defendant, who was the owner of the land, assented to it. There is an entire absence of testimony, however, as to the assent of the owner of the land. Plaintiff, in his cross-examination, referring to the survey and the establishment of the line referred to, in answer to the question, "You never talked to Mrs. Smith about this at all, did you?" said, "No, sir." It is not alleged that she ever saw the line or that she and the plaintiff ever saw each other in regard to the establishment of the line. The most that is attempted on the part of the plaintiff is to show that the surveyor who established the line pointed it out to her on the draft which he made of his work on the ground, but the surveyor does not say, and specifically declines to say, that she assented to it in any way. It is scarcely necessary to say that, under the plaintiff's testimony, as thus described, there was no consentable line established between the plaintiff and the defendant owner.

When the original offer was made by the plaintiff, supposed to cover the case, it was objected that there had been no holding to the line established by the surveyor, claimed to be a consentable line, since its survey, and the court then said, "If their proof does not measure up to the offer as you say it is, then their case falls, but we cannot anticipate that."

That there was no actual holding by the plaintiff to the so-called consentable line, is apparent from several considerations: first, the fact of his ejectment necessarily admits possession by the defendants; second, in his testimony in chief, he distinctly admits that one of the defendants, the husband of the owner, gave notice of his determination to back out, as he expresses it. He says: "I cleaned out a fence row through

and got my material out on the ground to build the fence and about a week after the line was surveyed then he sent me word that he was going to back out. Q. You had gotten ready to build the fence, you say? A. I had gotten ready to build the fence. Q. What material had you on the ground? A. I had posts and wire, and mauls to drive the posts with." And, third, on cross-examination, in answer to the question: "Since you claim that 'Squire Kirk established this line, there has been no holding up to it by you and her by consent on each side, has there?" he said, "This new line? No, sir."

The appellee, the plaintiff below, in his argument, practically admits that the plaintiff and the real defendant never had any agreement between them and never discussed the question of a consentable line, but it is argued that S. J. Smith, the husband of the defendant, acting for her and in her behalf, assented to the final establishment of the line, to which the plaintiff claims. It is admitted by the plaintiff, however, that, before any fence was built upon this line and before he took possession thereof, the said S. J. Smith repudiated it and refused to be bound by it. We cannot find in the testimony, however, anything which can, by any possibility, be construed into a delegation of authority by Kate M. Smith to her husband, Samuel J. Smith, to act for her in the settlement of the dispute which undoubtedly existed between the plaintiff and the defendants. On the contrary, when the plaintiff endeavored to establish an agency or authority from the wife to the husband, after giving considerable testimony showing that the husband acted for the wife in the farming operations and in their general business, the court refused to allow that testimony to stand as an authority for the husband to act for the wife in regard to the real estate, had it stricken from the record and directed the jury to pay no attention whatever to it. There is no other evidence which we can find which tended to establish an agency or to give the husband authority on behalf of the wife to consent to a line other than that established by the plaintiff's deed. It seems to us, therefore, that the plaintiff wholly failed to establish any title to the land which he claimed. It was outside of his deed and he had no shadow of consent on

the part of the owner, unless her husband acted for her and by her authority, and this the plaintiff failed to show affirmatively, and indeed failed to show any facts from which the jury could infer such authority.

After a careful reading of the testimony, we are of opinion that the defendants were entitled to a nonsuit at the close of the plaintiff's testimony, and, inasmuch as both defendants absolutely denied any authority by the wife to the husband to act for her, and the wife denied any assent of any kind, either to the plaintiff, the surveyor or any other person, to the line as established on the ground by the surveyor, the request for binding instructions for the defendants should have been granted.

The principles which underlie the establishment of what is known as a consentable line in Pennsylvania are laid down very clearly by Mr. Justice GIBSON in Perkins v. Gay, 3 S. & R. 327. It was also held in Adamson v. Potts, 4 Pa. 234, referring to Perkins v. Gay, 3 S. & R. 327, that, "To establish a consentable line between owners of adjoining tracts, knowledge of and assent to the line as marked must be shown in both parties." See also Grogan v. Leike, 22 Pa. Superior Ct. 59.

Having failed to show any assent on the part of the defendant, Kate M. Smith, the owner of the land, or any authority given by her to her husband to act for her, or facts from which such authority could be inferred, the plaintiff, we think, failed to establish any one of the essentials of a consentable line or in any way his right to the land for which the ejectment was brought.

Judgment reversed.