J-S64020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GREGORY R. REED AND SUSAN F. REED, HIS WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| ERIC L. NICARRY AND PENNEY J. NICARRY | |
| Appellees | No. 788 MDA 2015 |

Appeal from the Judgment Entered on May 27, 2015
In the Court of Common Pleas of Huntingdon County
Civil Division at No.: 1547 of 2012

BEFORE:  FORD ELLIOTT, P.J.E., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED DECEMBER 16, 2015**

Appellants Gregory and Susan Reed (collectively, "the Reeds") appeal the trial court's entry of judgment in favor of appellees Eric and Penney[1] Nicarry (collectively, "the Nicarrys") in the Reeds' action in ejectment and/or to quiet title over a disputed parcel of land along the common boundary of their respective properties.  We affirm.

---

[*]     Former Justice specially assigned to the Superior Court.

[1]     There appears to be some confusion as to whether the proper spelling is Penney or Penny.  Although counsel for the Nicarrys before this Court uses Penny, the initial filings before the trial court in this matter, and consequently the docket, use Penney.  For consistency, we use the latter spelling.

The trial court has provided the following brief narrative account of this case's factual history:

The boundary line fray began in October of 2012 when [Appellant Gregory Reed][2] became aware of a railroad spike driven into Dirt Mountain Road which indicated to him the "repositioning" of the corner at the heart of this dispute. We learned at trial that the repositioned corner had been marked with the spike by Kirby Lockard of Africa Engineers and Land Surveyors, Inc. Lockard had conducted a survey for [Appellee Eric Nicarry] on September 26, 2012. At the time Gregory Reed encountered the railroad spike, he also encountered "no trespass" signs in an area that he believed he owned.

_____

[2] [Gregory Reed, Esq.,] represented himself and his wife throughout this litigation.

The Reeds, until this point, [had assumed] that the correct location of the southwestern corner of their property and the northwestern corner of the Nicarry property had been established in 1980 when Gary Young performed surveys on both properties in question. Lockard's survey in 2012, however, placed the disputed corner for the line in a different location. The difference between the two disputed corners, placed more than three decades apart, creates a triangular piece of wooded mountain ground which amounts to approximately .624 acres. [The Reeds] claim this triangular area and seek to eject [the Nicarrys] from the .624[-]acre piece of land.

Trial Court Opinion, 12/23/2014, at 4-5 (citations omitted).

In support of this brief narrative, the trial court also made the following specific findings of fact:

2. The parties trace their respective titles to the land owned by Solomon Mierley, who at his death[] devised "my mountain land lying on Sidling Hill . . ." to his two sons, John and George Mierley.

* * * *

- 2 -

4.    In 1893, the Mierley brothers deeded a portion of this property (nine acres and the usual allowances) to Joshua Gosnell.  The deed was recorded on July 17, 1893.  This parcel is now owned by [the Reeds].

5.    Subsequently, George and John Mierley conveyed "nine acres and the usual allowances" to brother[] George Mierley (deeded December 5, 1893, recorded April 4, 1900).  This parcel is now owned by the [Nicarrys].

6.    The common boundary line dividing the properties in question is described in [the Reeds'] deed by the following call:  "thence south 76 ½ degrees east 17 perches to a stone heap, the place of beginning."

7.    The same line is described in the [Nicarrys] deed by the following call:  "thence by lands now or formerly of John Mierley, part of this survey, North 76 ½ degrees [w]est, 17 perches to a stone heap."

8.    The descriptions of the common line have been consistent in all of the conveyances since there was unity of ownership of the two properties over one hundred years ago.

9.    The location of this common line is the issue in this case and was the subject matter of the testimony of the two experts.

10.    In March of 1980, Lois O. Lucas (a predecessor in the [Reeds'] title) hired Gary L. Young to survey what is now the [Nicarrys'] land.

12.    In September of 2012, Kirby Lockard, a surveyor for Africa Engineering, was hired by [the Nicarrys] to prepare a survey of their land.    Lockard testified as an expert witness for the [Nicarrys].

13.    Surveyor John Young testified as the [Reeds'] expert.  He had assisted when his brother Gary Young conducted the 1980 surveys of both properties, and he performed a retracement survey of the Reed tract in 2005.

14.    While both surveyors testified that the deed descriptions of the line were problematic in locating the line in the field, each went about resolving the problem using different methods.

* * * *

- 3 -

17.    The difference in opinion between the surveyors comes down to the placement of [C]orner #6 in 1980 ([the Reeds'] survey) and Corner #7 in 2012 ([the Nicarrys'] survey).

18.    The difference between Corners #6 and #7 creates a triangular area encompassing 0.624 acres.

19.    In 1980 the Youngs were unable to locate the "stone heap" referred to in each of the deeds, and they placed what has now been referred to as Corner #6.  The Youngs placed an iron pin in the location that they believed best replicated the location of the missing "stone heap."

20.    Not surprisingly, when completing a 2005 retracement survey John Young located Corner #6 in the same location where he and his brother had placed it when they performed their 1980 [s]urveys.

21.    In their 1980 surveys of the properties at issue, the Youngs changed the bearing and direction of the dividing line in question in an effort to reconcile the distance and area of their surveys to compensate for the missing "stone heap."

* * * *

24.    Kirby Lockard of Africa Engineers . . . discovered the 1980 surveys of the two properties when conducting research in preparation for his survey performed for [the Nicarrys] in 2012.

25.    In the process of conducting his 2012 survey, Lockard came to the conclusion that Corner #6, as identified by the 1980 surveys and 2005 retracement survey, was not in accord with [the Nicarrys'] deed.

26.    In an effort to compensate for the missing "stone heap," Lockard maintained the bearing and direction of the lines in question and changed the distances and adjusted the acreage to establish the boundary line.

27.    The location of Corner #7 was established by Lockard by holding the deed angle of the line on top of Sidling Hill.

28.    The angle created between the two lines connecting Corners #1 and #7 is precisely the angle called for in each deed.

29. When reconciling boundaries, the general order of priority is to be given first to valid monuments, next to directions, then to distances and lastly to area.

30. The general order of priority should be disregarded when the errors are large or the measurements are obviously incorrect. In such a case, other evidence should prevail over the order of priority.

31. No credible evidence has been presented to indicate that the general order of priority should be dismissed in favor of an exception.

32. Corner #7, placed in 2012, is the factually correct location for the terminus of the boundary line dividing the properties owned by [the Reeds] and [the Nicarrys].

33. Corner #6, placed in 1980, is a factually incorrect location for the terminus of the boundary line dividing the properties owned by [the Reeds] and [the Nicarrys].

34. No credible evidence was presented as to a dispute or an agreement between Lois O. Lucas and Robert M. Mierley (who owned the respective properties in 1980) regarding the boundary line.

35. The 1980 surveys prepared by the Young brothers were never recorded.

36. The properties in question were conveyed on several occasions after 1980, however, the deed descriptions conveying the properties did not utilize the surveys to reform the metes and bounds descriptions of the property.

*Id.* at 1-4 (citations omitted).

These findings were drawn from a one-day bench trial held on October 2, 2014, after which the trial court invited the parties to file proposed findings of fact and conclusions of law. The parties complied, and, on December 23, 2014, the trial court issued a memorandum finding in favor of the Nicarrys and against the Reeds on the Reeds' action in ejectment, in

effect validating Lockard's placement of Corner 7 and confirming that the disputed triangular parcel in question properly was included in the Nicarry's property.[2] The Reeds filed post-trial motions, which the trial court ultimately denied on April 27, 2015.[3] On May 7, 2015, before the trial court entered judgment upon its verdict, the Reeds filed the instant appeal. On May 8, 2015, the trial court entered an order directing the Reeds to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Reeds timely complied on May 18, 2015. On May 19, 2015, this Court, noting that the Reeds' appeal was not ripe for want of a trial court entry of final judgment upon the verdict, entered an order directing the Reeds to praecipe for the entry of judgment, and to document same with this Court. The Reeds complied, perfecting their appeal. The trial court entered its Rule 1925(a) opinion on July 2, 2015, wherein it recited the Reeds' issues and directed this Court to the appropriate passages of its December 23, 2014

---

[2]      The trial court correctly noted that the Reeds' action to quiet title was incompatible with an action in ejectment, and that only the latter would lie under the circumstances of this case. *See* T.C.O. at 5-6 (citing *Moore v. Duran*, 687 A.2d 822, 827 (Pa. Super. 1996); *Plauchak v. Boling*, 653 A.2d 671 (Pa. Super. 1995); *Riverwatch Condo. Owners Ass'n v. Restoration Dev. Corp.*, 931 A.2d 133, 141 (Pa. Cmwlth. 2007)). The parties do not dispute the trial court's ruling in this regard.

[3]      In the interim, a number of procedural hiccups, including the Reeds filing a premature appeal to this Court, protracted these proceedings. They need not be recited at length.

memorandum, from which we have excerpted the above passages. This case is now ripe for our review.

Before this Court, the Reeds raise the following issues:

A.    Did the trial [court] abuse [its] discretion when [it] concluded that [the] Reeds did not prove, to a preponderance of the evidence, a consented[-]to line by "dispute and compromise" because [the] Reeds did not prove a "dispute" as to the location of the common line between the Reed [t]ract and the Nicarry [t]ract?

B.    Did the trial [court] abuse [its] discretion when [it] concluded that [the] Reeds did not prove, to a preponderance of the evidence, a consented[-]to line by "recognition and acquiescence" because [the] Reeds did not prove that the line established in 1980 was recognized by anyone other than [the] Reeds in 2005?

Brief for the Reeds at 4.

Analyzing this case strictly as presenting an action in ejectment, ***see*** *supra* n.1, the trial court correctly stated the governing law as follows:

The [plaintiff's] burden in an action in ejectment at law is clear: they must establish the right to immediate exclusive possession. ***See, e.g., Hallman v. Turns***, 482 A.2d 1284, 1287 (Pa. Super. 1984); ***Harbor Marine Co. v. Nolan***, 366 A.2d 936 (Pa. Super. 1976). Additionally, recovery can be had only on the strength of their own title, not the weakness of [the defendant's] title. ***See Artz v. Meister***, 123 A. 501 (Pa. 1924); ***Ratajski v. W. Penn Mfg. & Supply Corp.***, 182 A.2d 243 (Pa. Super. 1962). The root of an ejectment action, therefore, rests with the plaintiff['s] ability to identify, by a preponderance of the evidence, the boundaries of a parcel of land to which [he or she is] out of possession, but for which [he or she] maintain[s] paramount title. ***Doman v. Brogan***, 592 A.2d 104, 108 (Pa. Super. 1991).

T.C.O. at 6 (citations modified). Our standard of review allows us to consider only whether the trial court's findings of fact are supported by competent evidence and whether the court misapplied the law. We view the evidence in the light most favorable to the verdict-winner, granting the prevailing party the benefit of every favorable inference. *Anderson v. Litke Family Ltd. P'ship*, 748 A.2d 737, 739 (Pa. Super. 2000). "The trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence." *Shaffer v. O'Toole*, 964 A.2d 420, 422-23 (Pa. Super. 2009) (brackets omitted).

The Reeds claim that they are entitled to relief under either of two rules that, together, comprise the doctrine of consentable lines.

> The doctrine of consentable lines has emerged as a separate and distinct theory from that of traditional adverse possession. There are . . . two ways in which one may prove a consentable line: by dispute and compromise, or by recognition and acquiescence. Both methods of proving a consentable line were reviewed in *Inn Le'Daerda, Inc., v. Davis*, 360 A.2d 209 (Pa. Super. 1976). First, the court explained, one may prove a consentable line by evidence of:
>
> > (1) a dispute with regard to the location of a common boundary line, (2) the establishment of a line in compromise of the dispute, and (3) "the consent of both parties to that line and the giving up of their respective claims which are consistent therewith." *Newton v. Smith*, 40 Pa. Super. 615, 616 (Pa. Super. 1909). "[W]here such a line has been clearly established and the parties on each side take possession or surrender

possession already held up to that line, it becomes binding, under the application of the doctrine of estoppel." *Id.*

* * * *

The establishment of this kind of boundary is always a matter of compromise, in which each party supposes he gives up for the sake of peace something to which in strict justice he is entitled . . . .

*Perkins v. Gay*, 3 Serge & Rawle 327, 332 (Pa. 1817).

*Inn Le'Daerda*, 360 A.2d at 215.

Proof of a consentable line by recognition and acquiescence was explained by the [*Inn Le'Daerda* Court] as follows:

Our courts have long recognized . . . that a boundary line may be proved by a long-standing fence without proof of a dispute and its settlement by a compromise. In *Dimura v. Williams*, 286 A.2d 370 (Pa. 1972), the [C]ourt noted:

It cannot be disputed that occupation up to a fence on each side by a party or two parties for more than twenty-one years, each party claiming the land on his side as his own, gives to each an incontestable right up to the fence, and equally whether the fence is precisely on the right line or not.

*Id.* at 371.

In such a situation the parties need not have specifically consented to the location of the line. *Id.* at 371. It must nevertheless appear that for the requisite twenty-one years a line was recognized and acquiesced in as a boundary by adjoining landowners. *See Miles v. Penna. Coal Co.*, 91 A. 211 (Pa. 1914); *Reiter v. McJunkin*, 33 A. 1012 (Pa. 1896).

*Inn Le'Daerda*, 360 A.2d at 215-16.

*Niles v. Fall Creek Hunting Club, Inc.*, 545 A.2d 926, 930 (Pa. Super. 1988) (citations modified).

- 9 -

We review the Reeds' arguments in turn. In support of their "dispute and compromise" claim, the Reeds argue that the Reeds' and Nicarrys' predecessors' mutual retention of Gary Young in 1980 to locate the boundary between their parcels viewed in tandem with the pin located in what Gary Young located as the corner, which neither the original retaining parties or their successors in interest appear to have disturbed or disputed, were evidence both of dispute and of compromise. Brief for the Reeds at 12-22.

The trial court in its memorandum opinion asserted that the Reeds had presented no evidence to establish the first prong of the test, because "[t]here was no admissible, credible evidence that established a dispute regarding the subject properties in 1980." T.C.O. at 7. Having so found, the trial court did not clearly state a finding regarding the existence of a compromise. However, the trial court, in its Rule 1925(a) opinion, noted that "the hiring of a surveyor hardly evidences the **settlement** of a dispute." Rule 1925(a) Opinion, 7/2/2015, at 2 (emphasis added).

The Reeds focus virtually all of their energy upon the first finding, asserting that the trial court "[o]stensibly conced[ed] that [the] Reeds had established the second and third elements [of the test] (a compromised line and the consent of both parties)." Brief for the Reeds at 12. They go on to insist at considerable length that there was, in fact, a dispute between the 1980 owners of the property, because only that would explain those parties' mutual retention of a surveyor. *See id.* at 14-20.

First, we do not read the trial court's reasoning so restrictively. In its initial memorandum, it is true that the court's only clearly stated basis for its ruling was the lack of evidence of a dispute. However, in its Rule 1925(a) opinion, the court specifically stated that the evidence did not establish the **settlement** of a dispute, which goes farther than merely citing the lack of evidence of a dispute in the first instance. Secondly, in its separate ruling rejecting the Reeds' alternative "recognition and acquiescence" theory, taken up *infra*, the trial court explicitly found insufficient evidence of a "compromised line." **See** T.C.O. at 8 ("Most telling in [the Reeds'] attempt to establish recognition and acquiescence is their failure to prove that the line established in 1980 was ever recognized by anyone other than the [Reeds] in 2005[, at the time of the survey retracement].").  It would be problematic indeed to find (as we do) no error in the trial court's recognition and acquiescence ruling but simultaneously determine that the court found that there was, in fact, a compromised line.

In any event, this Court may affirm the trial court on any legally valid basis. **Plasticert, Inc., v. Westfield Ins. Co.**, 923 A.2d 489, 492 (Pa. Super. 2007). Even if we agreed with the Reeds that the trial court erroneously determined that the Reeds had failed to establish by a preponderance of the evidence that their predecessors in title disputed the location of the boundary line in 1980, and that their dispute prompted them to enlist the assistance of Gary Young, there simply is no evidence upon which a fact-finder reasonably could conclude that those predecessors

mutually agreed to accept Gary Young's survey as a settlement of such a hypothetical dispute. A fact-finder could not reasonably interpret the mere placement of a marker at the disputed corner of the property, without more, as preponderant evidence of a settlement of the dispute. As the trial court noted, neither the survey nor any other documentation of the purported compromise boundary was recorded or otherwise substantiated beyond the mute insertion of a pin at the corner located by Young, and in none of several post-1980 transfers did anyone seek to reform the irreconcilable metes and bounds on the respective titles for the purpose of their future conveyances. *See* T.C.O. at 8. While it is perhaps the case that neither gesture would be required as a matter of law to establish a dispute and a compromise, here it is not just the absence of these events, but the absence of **any** events of a similar sort that renders the Reeds' proofs insufficient to establish a dispute and compromise by a preponderance of the evidence. Hence, the trial court did not err or abuse its discretion in rejecting the Reeds' claim of a dispute and compromise that solemnized Gary Young's 1980 survey as an agreed-to boundary between the parcels.

Furthermore, even if we were persuaded that the evidence would support the conclusions pressed by the Reeds, that would be a far cry from establishing that the trial court's findings to the contrary were unsupported by the record and constituted an abuse of discretion. At a minimum, the thin record on these points furnished the trial court with ample basis to find

that the Reeds failed to establish a dispute and compromise by a preponderance of the evidence. *See Shaffer*; *Anderson*, *supra*.

The Reeds next contend that the trial court erred or abused its discretion in rejecting their claim of recognition and acquiescence. The trial court rejected the Reeds' claim upon the following basis:

> Most telling in [the Reeds'] attempt to establish recognition and acquiescence is their failure to prove that the line established in 1980 was ever recognized by anyone other than the [Reeds] in 2005. The 1980 surveys were never recorded, nor did any subsequent deed description ever refer to the 1980 surveys. The property now owned by the Reeds was transferred in 1993, 1994 and again when the Reeds took title in 2000. The Nicarry property was transferred in 1986, 2004, 2006, 2008 and finally to the Nicarrys in 2012. There was never an indication in any of those deeds of the 1980[-]created boundaries. In fact, the deed descriptions today mirror those from 1883.
>
> This circumstance is not as if there is a fence or a wall dividing two properties in the middle of a neighborhood or in the city for all to see. These properties are in rural Huntingdon County in the woods. We cannot make a finding of recognition and acquiescence when [the Reeds] have failed to present any credible evidence that the predecessors in title of either property acknowledged the line in question. The argument seems to be "if no one objected to the surveys, then everyone must have acknowledged and agreed with the survey." This theory would contradict the long held legal ten[et] that the [p]laintiff has the burden to prove [his or her] case, and [he or she] may not do so through mere speculation.

*Id.* at 8-9 (footnote omitted).

- 13 -

In support of their contention that their evidence was sufficient not only to support a finding of recognition and acquiescence but to compel it,[4] the Reeds rely exclusively upon this Court's decision in **Niles**. However, **Niles** is distinguishable from the instant case in multiple dimensions,[5] and militates more against the Reeds' claim of recognition and acquiescence than in its favor. In **Niles** a purchaser of one parcel called into question the location of its boundary with an adjacent parcel. The purchaser invited the owners of the adjacent property to assist a surveyor in settling the location of the boundary. The parties met with the surveyor, and the surveyor identified what he believed to be the proper boundary and painted the proposed line in yellow. The surveyor prepared a map for the purchaser and a deed reflecting the new survey was prepared and utilized to complete the purchase. The purchaser ran a strand of wire along the line in question and posted no trespassing signs along the agreed-to boundary. In the ensuing decades, posted no trespassing signs were maintained along the line, and the line further was marked by the strand of wire as well as blaze marks on

---

[4]    They must establish exactly that in order to prevail, because where the evidence is such that it would support either outcome, we will not disturb the fact-finder's decision as to which outcome is just. **See Shaffer**; **Anderson**, *supra*.

[5]    The Reeds allow that there are two distinguishing facts between **Niles** and this case. Brief for the Reeds at 13. One might quibble with the precise number of distinguishing factors, but, as the list to follow makes clear, there certainly are more than two.

the trees. Additionally, a visible timber cut line ran along the agreed-to boundary and additional evidence showed that the adjacent owner had detoured a logging road to steer clear of the line, had posted along the line, and had leased hunting rights that ran up to that line. *Niles*, 545 A.2d at 928. This was strong evidence of acquiescence to the surveyor's line.

By comparison, in the instant matter the only marking that the Reeds can identify as on par with those recited in *Niles* is the lone pin placed at the corner Gary Young identified as proper in 1980. There was no evidence of any sort of posting along the proposed boundary. There was no physical barrier or other visible evidence of a boundary such as a timber cut until long after 1980. The Reeds introduced no evidence of the parties' respective usage of their parcels up to some line corresponding to that proposed by Gary Young in 1980. Indeed, in their lengthy argument, the only relevant evidence they recite that is supported by the record involves timbering up to the putative property line by the Reeds in 2005 and 2006, but that neither establishes recognition by the Nicarrys or their predecessors nor does it establish that any such recognition encompassed twenty-one years.

Even if the Reeds established an evidentiary basis upon which the trial court could have ruled in their favor, which the trial court certainly did not believe and which appears to us to require stretching the record to its breaking point, to prevail before this Court they must do more. They must persuade this Court that the trial court could have ruled no other way. Based upon our review of the record, they have failed to do so. After careful

- 15 -

review of the record, a fact-finder reasonably could have concluded that the Reeds failed to establish by a preponderance of the evidence that the owners of the two parcels at issue recognized the 1980 boundary and acquiesced to it through their usage and treatment of the property for a twenty-one-year span. Accordingly, the trial court did not abuse its discretion or commit an error of law.[6, 7]

---

[6] The Reeds dedicate over one third of their argument to insisting that the trial court's opinion betrayed the court's partiality, prejudice, bias, or ill will. *See* Brief for the Reeds at 28-37. Distilled to its essence, their argument derives from the trial court's curt language regarding what it took to be the Reeds' reliance upon evidence not of record. In particular, the Reeds home in on the trial court's dedication of a little over a page and a half of its original memorandum to criticizing the Reeds for submitting a new document not in evidence as an attachment to their post-trial Memorandum in Support of Proposed Findings of Fact and Proposed Conclusions of Law, a discussion that the Reeds identify as containing "[e]xtreme and excessive criticism." *Id.* at 35. The document in question was submitted in support of their expert's testimony, but had not been admitted into evidence or addressed by the parties' expert witnesses. *See, e.g.*, T.C.O. at 10 ("While it is surely appropriate to vociferously argue a point, it is just as inappropriate to attempt to present inadmissible evidence to the fact[-]finder."). Remarkably, the Reeds acknowledge that they "were in error" but maintain that "the error was greatly exaggerated by the trial [court]," and became the "crown jewel" of the trial court's opinion. As noted, *supra*, Gregory Reed is an attorney. Perhaps the trial court's concise, and at times curt rejections of Reeds' claims and arguments were more pointed than was strictly necessary, but we find a good deal more raw invective in the Reeds' appellate brief than in the trial court's opinion. Gregory Reed seems inclined to take personally what most seasoned attorneys accept as an occupational hazard—that a trial court may find one's arguments unconvincing and may not offer a spoonful of sugar as a *digestif*. We detect nothing in the trial court's opinion to suggest the sort of partiality, prejudice, bias, or ill will that might reflect an abuse of discretion.

- 16 -

Judgment affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2015

---

*(Footnote Continued)* —————————

[7]     In their Rule 1925(b) statement, the Reeds also contended that the trial court should not have favored the Lockard survey over the Youngs' survey and survey retracement. Thus, they argue, the trial court should have adopted Lockard's methodology. To some extent, they intertwine their argument on this issue within their lengthy complaint about the trial court's tone in rejecting their claims. However, this does not constitute meaningful legal argument. Moreover, they make no reference to this issue in the statement of the questions presented provided in their brief. Because they have not properly identified the issue as one they seek to press before this Court and have provided no clear legal argument in support of it, the issue is waived. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly encompassed thereby."), 2119(a) (requiring the discussion of pertinent authorities).